UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-60146 CIV-TORRES

Consent Case

CHRISTOPHER JAMES PEER,

    Plaintiff,

v.

DANIEL WARFIELD LEWIS

    Defendant.
_____/

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT, DANIEL WARFIELD LEWIS' MOTION FOR SANCTIONS
AGAINST PLAINTIFF'S FORMER COUNSEL, RICHARD ROSENBAUM, ESQ.
AND/OR LAW OFFICES OF RICHARD L. ROSENBAUM, ESQ.
<u>PURSUANT TO 28 U.S.C. §1927, AND THE COURT'S INHERENT POWER</u>**

    The Defendant, DANIEL WARFIELD LEWIS, (hereinafter "Lewis") by and through his undersigned counsel files this, his Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and Law Offices of Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power, and in support states:

    Lewis requests that this Honorable Court impose sanctions, pursuant to 28 U.S.C.. §1927 (hereinafter §1927"), the Court's Inherent Power, and Fed. R. Civ. P. 11(c)(1)(B), against Peer's Former Counsel, Richard L. Rosenbaum, Esq. and Law Offices of Richard L. Rosenbaum, Esq. (collectively hereinafter "Rosenbaum")[1]. §1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United
> States or any Territory thereof who so multiplies the proceedings in any case
> unreasonably and vexatiously may be required by the court to satisfy personally

---

[1] "Courts may assess 'attorneys' fees against litigants, counsel, and law firms who willfully abuse the judicial process b conduct tantamount to bad faith.'" <u>Fowler v. Merrill Lynch Credit Corporation</u>, 2006 U.S. Dist. LEXIS 53424 (N.D. Ga. 2006), quoting <u>Jerelds v. City of Orlando</u>, 194 F. Supp. 2d. 1305, 1312 (M.D. Fla. 2002). (footnote omitted.)

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power

> the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

As explained by the Eleventh Circuit in Byrne v. Nezhat, 261 F.3d 1075, 1106 (11th Cir. 2001):

> [The Court's Inherent] Power is derived from the court's need 'to manage its own affairs so as to achieve the orderly and expeditious disposition of cases.' Chambers v. Nasco, Inc.,501 U.S. 32, 43, 111 S. Ct. 2123, 2132, 115 L.Ed. 2d 27 (1991). The 'inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct.' Chambers, 501 U.S. at 46, 111 S. Ct at 2133. One aspect of a court's inherent power is the ability to assess attorney's fees and costs against the client or his attorney, or both, when either has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' N68 Id. at 45-46, 111 S. Ct. at 2133. This court has explained that the 'key to unlocking a court's inherent power is a finding of bad faith.' Barnes v. Dalton, 158 F.3d at 1212, 1214 (11th Cir. 1998); *see also* Mroz. 65 F/3d at 1575 ('Invocation of a court's inherent power requires a finding of bad faith.') A court should be cautious in exerting its inherent power and 'must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees.' Chambers, 501 U.S. at 50, 111 S. Ct. at 2132. Because the court's inherent power is so potent, it should be exercised with 'restraint and discretion.' N69 Id.

(Footnotes omitted.)

The Eleventh Circuit summarized the purpose of the Court's Inherent Powers: "to redress obstruction of justice," "protect participants in judicial proceedings," and "to prevent miscarriages of justice." *Id*, at 1132.

The Eleventh Circuit has expressly lamented about the attorneys who have sold out to their clients and disavowed their duties as officers of the court:

> All attorneys, as 'officers of the court,' owe duties of complete candor and primary loyalty to the court before which they practice. An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly. This concept is as old as common law jurisprudence itself. In England, the first licensed practitioners were called 'Servants at law of our lord, the King.' N 10 and were absolutely forbidden to 'deceive or beguile the Court.' n 11 In the United States, the first Code of Ethics, in 1887, included one cannon providing that 'the attorney's office does not destroy …. accountability to the Creator,' and another entitled 'Client is not the Keeper of the Attorney's Conscience.'
>
> Unfortunately, the American Bar Association's current Model Rules of Professional Conduct underscores the duty to advocate zealously while neglecting the corresponding duty to advocate within the bounds of the law. As a result, too many attorneys have forgotten the exhortations of these century-old cannons. Too

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for
Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of
Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power

> many attorneys, like defense counsel in this case, have allowed the objectives of
> the client to override their ancient duties as officers of the court.  In short, they
> have sold out to the client.

Malatuea v. Suzuki Motor Company, Inc., 987 F.2d 1536, 1546 (11th Cir. 1993). Of one thing we will never be certain, who was the client?  Based on Peer's three (3) law firm's actions and inactions, it is not entirely clear that Peer was the client.

### Rosenbaum Initiated a Bogus Case for Improper Purposes:
### Then Rosenbaum Maintained a "Bogus" Case to Conceal the Truth

Borrowing language from Byrne, this is a "bogus" case brought by Rosenbaum and a "bogus" candidate in an attempt to use the judicial process to subvert an election, and then Rosenbaum maintained this action to conceal the "bogus" candidate's "bogus claims and defenses" and the identity of the shadow people. *Id.* at 1132.

### Rosenbaum Abused the Judicial Process for Improper Political Purposes

The evidence and testimony in this matter reveal: Rosenbaum successfully and improperly abused the judicial process to affect the outcome of an election, and neither Rosenbaum nor Peer intended to pursue this action after the election.  Pursuant to §1927, the Court's Inherent Power, and Fed. R. Civ. P. 11(c)(1)(B), Rosenbaum should be sanctioned for maintaining this action for improper political purposes, not for reparation of an actual wrong, and without any factual basis.

It is undisputed that:

- As a result of Christopher James Peer's (hereinafter "Peer") entry into electoral race for Mayor of the City of Fort Lauderdale, the City of Fort Lauderdale scheduled a primary election for February 14, 2006, thereby reducing the time a challenger would have to compete with a well entrenched incumbent.

- Peer engaged public relations consultant and Naugle contributor, Charles Malkus (hereinafter "Malkus") a public relations consultant and financial contributor to the incumbent Naugle. Malkus encouraged Peer to run for Mayor and promised to help him with his campaign, but Peer did not pay him for his services.

- On January 17, 2006, Robert David Malove, Esq (hereinafter "Malove") filed the **unverified**

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of <u>Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power</u>

Emergency Complaint for Declaratory Judgment in the State Action[2] (hereinafter "Emergency Complaint") which sought entry of an:

> Order declaring the Defendant's, CHRISTOPHER JAMES PEER'S candidacy, for the post of Mayor-Commissioner of the City of Fort Lauderdale, unlawful, pursuant to the City Charter's qualification criteria for establishing residency, as prescribed in Article III, Section 3.03 of said City Charter, and for such other relief deemed just and proper.

Paragraph 19 of the Emergency Complaint ('Paragraph 19") states in part: "Defendant's current address is '18 Charter Drive, Wilmington, North Carolina 28403.'"

- Malkus who did not previously know Rosenbaum contacted Rosenbaum regarding representation of Peer.

- On January 30, 2006, there was a meeting wherein Peer, Rosenbaum, Malkus, and Chris Rickborn, Peer's campaign treasurer, were present wherein bringing this action was discussed, and Rosenbaum was retained by Peer. Peer did not pay Rosenbaum a retainer or costs.

- At the February 1, 2006 hearing in the State Action, Lewis, Malove, Rosenbaum, and Malkus and reporters from both the Sun-Sentinel and Miami Herald were present. After the hearing, but before leaving the courthouse, Malove had a conversation with Rosenbaum in the presence of both Peer and Lewis wherein he informed Rosenbaum and Peer that neither Lewis nor Malove ever obtained or saw a copy of Peer's credit report, and the information contained in Paragraph 19 regarding Peer's address was obtained from a Westlaw People Finder Historic Tracker Record which cited TransUnion as its source. That same day, Malove drafted and filed an *Amended* Emergency Complaint eliminating any information as to Westlaw's source of Peer's North Carolina address, in part to eliminate even the appearance of impropriety.

- On February 1, 2006, Rosenbaum requested that Peer "pull" his credit report.

- On the evening of February 1, 2006, Jim Naugle (hereinafter "Naugle") threatened Lewis with criminal prosecution and civil litigation if Lewis did not drop the State Action or withdraw from the Mayoral Race. Lewis recalls the substance of his threats as follows:

> You're going to jail. It's a shame your kids will have to visit you in the federal jail

---

[2] The term "State Action" is used hereinafter to refer to the matter of <u>Dan Lewis v. Christopher James Peer</u>, Broward County Circuit Court Case No. 06-000599 CACE (21).

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for
Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of
<u>Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power</u>

> as they grow up.  They [Peer] met with the federal prosecutors and the state
> attorney all day.  Your best chance to be with your kids and avoid prosecution is
> to immediately withdraw from the race".

- On February 2, 2006, Peer obtained his TransUnion credit report (hereinafter "Peer's 2/2/06 credit report" and provided his 2/2/06 credit report to Rosenbaum.

- On February 2, 2006, the Sun-Sentinel reported that Rosenbaum and Malkus, a contributor to Naugle's campaign, were filing a federal lawsuit claiming Lewis "broke the law by disclosing in his lawsuit information -- an address from Peer's credit report."

- On February 3, 2006, eleven (11) days before the primary election and four (4) days before the next hearing in the State Action, Rosenbaum filed this action, which included the allegation in paragraph 19 that Lewis violated 15 U.S.C §1681 q which provides:

> [a]ny person who knowingly and willfully obtains information on a consumer from
> a consumer reporting agency under false pretenses shall be fined under Title
> 18, imprisoned for not more than 2 years, or both.

- Rosenbaum's process server did not serve Lewis on February 3, 2006; Rosenbaum's process server had to effectuate serve on Lewis quickly because of a hearing that was coming up; and despite the fact there was no service on Lewis on February 3, 2006, Rosenbaum filed the 2/3/06 Return of Service anyway.

- On Saturday, February 4, 2006, the Sun-Sentinel and Miami Herald reported allegations of Peer's Complaint in this matter before the Summons, Complaint and Notice of Filing Return of Service executed for Lewis on 2/3/06 in this matter were entered into PACER's docket.

- On Saturday, February 4, 2006, the Miami Herald reported that Malkus "noted that it is a felony to obtain information from a consumer reporting agency under false pretenses.

- On February 7, 2006, there was another hearing in the State Action.  Lewis attended this hearing with Malove.  Lewis was served by Rosenbaum's process server after this hearing.

- Peer did not attend any candidates' forums or debates, and did not raise much money.

- On February 14, 2006, Naugle won the primary election, and Lewis and Peer lost.

- Peer celebrated Naugle's election and attended Naugle's February 14, 2006 primary election campaign party.

If the true purpose of this lawsuit was to remedy a Fair Credit Reporting Act (hereinafter

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power

"FCRA") violation, Rosenbaum would have filed suit against Malove who drafted and filed the unverified Emergency Complaint. However, Malove was not running for the office of Mayor of the City of Fort Lauderdale, but Lewis was running for the office of Mayor of the City of Fort Lauderdale, and had challenged Peer's qualifications to run for the office of Mayor of the City of Fort Lauderdale. So, Peer, with the help of Rosenbaum, and Malkus sued Peer's and Naugle's opponent, Lewis, for absolutely protected judicial speech made by Lewis' lawyer, Malove, less than eleven (11) days before the primary election. If the true purpose of this lawsuit was to remedy Lewis' alleged publication of Peer's credit report, Rosenbaum did not need to rush filing and rush service of Peer's Complaint since the alleged publication of information from Peer's credit report had been remedied by the filing of the Amended Complaint.

If Peer, Rosenbaum, and Malkus' apparent purpose was to force Lewis to dismiss the State Action, they had less than four (4) days before the next case dispositive hearing to file and publicize this suit, and if their apparent purpose was corruption of an election through subversion of the judicial process, they had less than eleven (11) days to file and publicize this lawsuit.

This is simply a case that had no chance of success, no factual basis, should never have been filed, and certainly not maintained. This lawsuit was not filed to address a bona fide dispute. This case was all about abusing the judicial process by invoking the jurisdiction of the federal courts for improper political purposes: corruption and manipulation of an election, coercing Lewis to dismiss the State Action, and/or withdrawing from the Mayoral race, and causing Lewis enough negative publicity such that Lewis could not win the Primary or the General election.

Rosenbaum's actions in this case are uncannily reminiscent of the bad faith conduct of the lawyers in Byrne v. Nezhat. *Id.* at 1132. In Byrne, the Eleventh Circuit affirmed the district court's imposition of sanctions, pursuant to Fed. R. Civ. P.11 (hereinafter "Rule 11"), 28 U.S.C. §1927, and the Court's Inherent Power, against the Plaintiff's attorney, Byrne, who had "abused the judicial process" by "filing a frivolous lawsuit, in bad faith," "for the purposes of extorting a settlement from the defendants and, in the process ruining the Nezhats' professional reputations." *Id*. at 1117 and 1132.

In the interests of justice, and maintaining the integrity of the courts, sanctions pursuant to §1927 and the Court's Inherent Power are mandated against Rosenbaum who had no

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power

evidence to prove Peer's claims, and who possessed Peer's 2/2/06 credit report which Peer admits does not reflect Lewis obtained such report, and which contradicts Peer's claim.

## No Factual Basis for Peer's Lawsuit:  Rosenbaum Knew It Before He Filed It

Rosenbaum could not prove Peer's case.  Rosenbaum knew when he filed this case that Peer had no case. Prior to filing this lawsuit, Rosenbaum received Peer's 2/2/06 credit report. Peer admitted that his February 2, 2006 credit report does not reflect that Lewis obtained his credit report.  Peer admitted that he has no knowledge of any credit report pertaining to him that reflects that Lewis obtained or accessed his credit report.   Yet, at no point during his representation of Peer, did Rosenbaum produce Peer's 2/2/06 credit report.  At no point during Rosebaum's representation of Peer, did Rosenbaum produce any TransUnion credit report reflecting the N.C. address as stated in the Emergency Complaint or that Lewis inquired about, reviewed, and/or obtained Peer's credit report.  In fact, Peer's 2/2/06 credit report in Rosenbaum's possession contradicted Peer's claim that Lewis had impermissibly obtained Peer's credit report under false pretenses and published information from Peer's credit report.  Rosenbaum ignored the facts, and insisted upon Peer's claims knowing full well Peer's allegations did not comport with the facts.

On February 1, 2006, Malove informed Peer and Rosenbaum that neither Lewis nor he had obtained nor seen a copy of Peer's credit report and that the information contained in the contained in Paragraph 19 was obtained from a Westlaw People Finder Historic Tracker Record which cited TransUnion as its source. That same day, Malove filed an Amended Complaint eliminating Westlaw's source of Peer's North Carolina address.

Despite receiving Peer's credit report on February 2, 2007, at no point during Rosenbaum's representation of Peer did Rosenbaum proffer Peer's 2/2/06 credit report as evidence which proves that Peer's complaint had no basis in law or fact.

On February 3, 2006, Rosenbaum, who possessed and ignored Peer's 2/2/06 credit report, rushed to file this lawsuit based solely on the Emergency Complaint.  The only document cited by Rosenbaum in Peer's April 18, 2006 Initial Disclosures as a document that the Plaintiff intends to use to support his claims was the Emergency Complaint.

Rosenbaum had Peer's 2/2/06 credit report, and knew that Peer's lawsuit was factually baseless when Rosenbaum filed this action, and yet he continued to insist upon Peer's claims.

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power

Rosenbaum's sole basis for Peer's lawsuit -- the Emergency Complaint -- is not evidence. As a preliminary matter, as mentioned supra, prior to Rosenbaum filing this lawsuit, the Emergency Complaint was amended by the elimination of any information as to Westlaw's source of Peer's North Carolina address. Black's Law Dictionary, Sixth Edition, states that "amend" is defined as "[t]o improve. To change for the better by removing defects or faults. To change, correct, revise." Furthermore, the Emergency Complaint is unverified. The Emergency Complaint contains pure allegations. However, Lewis neither drafted, signed, nor amended the Emergency Complaint.

Even if the Emergency Complaint had not been amended and was, in fact, evidence, Lewis was afforded absolute immunity from Rosenbaum's prosecution and/or persecution of Lewis with respect to the Emergency Complaint. As explained by the Florida Supreme Court, the absolute immunity afforded by Florida's Litigation Privilege originally only covered defamatory statements made by parties, judges, witnesses and counsel in the course of the judicial proceedings:

> This absolute immunity resulted from the balancing of two competing interests: the right of the individual to enjoy a reputation unimpaired by defamatory attacks versus the right of the public interest to a free and full disclosure of facts in the conduct of judicial proceedings. Fridovich [v. Fridovich, 598 So.2d 65 (1965)] In determining that the public interest of disclosure outweighs an individual's right to an unimpaired reputation, courts have noted that participants in judicial proceedings must be free from the fear of later civil liability as to anything said or written during litigation so as not to chill the actions of the participants in the immediate claim. Id. Sussman v. Damian, 355 So. 2d 809 (Fla. 3d DCA 1977). Although the immunity afforded to defamatory statements may indeed bar recovery for bona fide injuries, the chilling effect on free testimony would seriously hamper the adversary system if absolute immunity were not provided. Wright v. Yurko, 446 So. 2d 1161 (Fla. 5th DCA 1984)

Levin, Middlebrooks, Mabie, Thomas & Mitchell, P.A. v. United States Fire Ins. Co., 639 So. 2d 606, 608 (Fla. 1994) The Florida Supreme Court extended this absolute immunity to "any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behaviour…" Id. Furthermore, "'the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action,' Mitchell v. Forsyth, 472 U.S. 511, 525, 86 L.Ed. 2d 411, 105 S. Ct. 2806 (1985), and is

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power

thus 'an *immunity from suit* rather than a mere defense to liability'." Jackson v. Bellsouth Telecommunications, Inc., 181 F. Supp. 2d 1345, 1363 (S.D. Fla. 2001).

Simply put: the Emergency Complaint is not evidence, and thus Rosenbaum filed and maintained an action without any evidence to support Peer's claims and with Peer's 2/2/06 credit report which he never proffered as evidence to support Peer's claims because it contradicted Peer's claims.

In Mayle v. Equifax Information Services, Inc., 2006 U.S. Dist. LEXIS 6000 (ND ILL 2006), a case similar to the instant case, the Court determined that the Plaintiff and her attorneys violated 15 U.S.C. §1681(n)(c) by filing an action that they should have known was frivolous, and that prior to filing suit both the Plaintiff and her attorneys had documentation that revealed the Plaintiff had no claim. Specifically, Mayle brought an FCRA action based on defendants' dissemination of derogatory information about her credit history, but the Court found that Mayle and her attorneys acted unreasonably in filing the action because they knew (or should have reasonably known) that their claims were frivolous where they had in fact documentation that the loan proceeds were indeed deposited into Mayle's student account. *Id.* The Court in Mayle granted sanctions against Mayle's attorneys pursuant to 28 U.S.C §1927 and sanctions against Mayle pursuant to 15 U.S.C §1681(n)(c). *Id.* Similarly, Rosenbaum should be sanctioned pursuant to §1927 for filing and maintaining this action which he knew was frivolous, particularly in light of the fact that prior to filing suit Rosenbaum had possession Peer's 2/2/06 credit report which reveled that Peer's claim was factually baseless.

The Eleventh Circuit has held that under §1927 an "attorney multiplies proceedings 'unreasonably and vexatiously' within the meaning of the statute only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" Amlong & Amlong, P.A. v. Denny's Inc. 457 F.3d 1180, 1190 (11th Cir. 2006) quoting Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir. 1991) The Eleventh Circuit set forth that for purposes of §1927 bad faith turns on the attorneys' objective conduct:

> The term 'uneasonably' necessarily connotes that the district court must compare the attorney's objective conduct against the conduct of a 'reasonable' attorney and make a judgment about whether the conduct was acceptable according to some objective standard. The term 'vexatiously' similarly requires an evaluation of the

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power

attorney's objective conduct.

*Id*. Although it is an objective standard, "a determination of whether an attorney's conduct was objectively reckless, or tantamount to bad faith, may be aided by an examination of the attorney's state of mind." *Id*.at 1192. As noted by the Eleventh Circuit:

> In short, a district court may impose sanctions for egregious conduct by an attorney even if the attorney acted without the specific purpose or intent to multiply the proceedings. That is not to say the attorney's purpose or intent is irrelevant. Although the attorney's objective conduct is the focus of the analysis, the attorney's subjective state of mind is frequently an important piece of the calculus, because a given act is more than likely to fall outside the bounds of acceptable conduct, and therefore be 'unreasonabl[e] vexatious[]' if it is done with a malicious purpose or intent. n1

*Id.* at 1190. (Footnote omitted with the exception of the previous quotation.)

The Eleventh Circuit has held that "an attorney who knowingly or recklessly pursues a frivolous claim acts in bad faith" Fowler v. Merrill Lynch Credit Corporation, 2006 U.S. Dist. LEXIS 53424 (N.D. Ga. 2006). Failure to conduct a reasonable pre-filing investigation into the facts justifies imposition of §1927 sanctions. In Fowler, the Court found that Mr. Welch's failure to investigate before filing his case and his "repeated failure to recognize and explore problems in his case since the action was filed" amounted to bad faith. *Id.*

Rosenbaum's conduct was objectively reckless and in bad faith. Rosenbaum had neither an 'empty head" nor a "pure heart". *Id.* at 1211. He had improper motives: 4 days to coerce Lewis to dismiss the State Action, and 11 days to fill the public with visions of Lewis in an orange jump suit and coerce Lewis to drop out of the race. Furthermore, he was aware of the meritlessness of this action before he filed it. Malove informed Peer and Rosenbaum that neither Lewis nor he had obtained or seen Peer's credit report and that Westlaw People Finder Historic Plaintiff's credit report. How in God's Green Earth is the Plaintiff going to ever prevail on an FCRA action without showing that the information published or obtained came from the Plaintiff's credit report? Rosenbaum's only basis for Peer's lawsuit was not Peer's 2/2/06 credit report, but rather the Emergency Complaint which was amended prior to the filing of this lawsuit, and is judicially protected speech and not evidence

Rosenbaum should be sanctioned for insisting upon Peer's claim after it was no longer

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power

tenable. Even if Rosenbaum was ignorant as to Florida's Absolute Litigation Privilege, he was put on notice that the Emergency Complaint is not evidence, but rather judicially protected speech when he replied to Lewis' Third Affirmative Defense on March 15, 2006. Yet, he insisted on Peer's frivolous and factually baseless claims clearly knowing that they were not tenable.

Rosenbaum is subject to §1927 Sanctions for filing Peer's lawsuit after having actual knowledge that Peer's claim lacked any merit, and then continuing to advocate such baseless claim. As noted by the Middle District:

> [w]hen it becomes apparent that discoverable evidence does not support a litigant's claim, the litigant and his counsel have a duty to discontinue their efforts, and the continued intentional prosecution of an action that lacks a plausible legal or factual basis may be considered unreasonable, vexations to the judicial process and tantamount to bad faith.

Hudson v. International Computer Negotiations, Inc. 2006 U.S. Dist. LEXIS 50240. In Hudson, the Middle District found "that in combination, the frivolous nature of the claim, Hudson's retaliatory motive counsel's handling of the case particularly as it relates to discovery, and the continued efforts to support the claims in the face of both a lack of supporting evidence and clear evidence to the contrary, warrant the imposition of sanctions pursuant to §1927. The Eleventh Circuit in Turner v. Sungard, 91 F.3d 1418, 1422 (11th Cir. 1996) affirmed Rule 11 sanctions and §1927 sanctions against Plaintiff's new counsel where:

> [t]he district court found that (1) Penick knew from the moment he began representing Plaintiff that his claim was meritless, (2) at the pretrial conference, Penick represented that he had evidence to support Plaintiff's claim that the job at issue had been filled though no evidence was ever presented to the court, and (3) after taking Zales' deposition, Penick had to know that the case was without a factual basis but failed to dismiss it, thereby forcing Sungard (and the court) to expend time and money on a motion for summary judgment motion. That the contentions contained in the complaint were not frivolous at the time it was filed does not prevent the district court from sanctioning Penick for his continued advocacy of them after it should have been clear that those contentions were no longer tenable. An ample basis exists for the district court's imposition of Rule 11 sanctions.  n5
>
> > n5. Because the district court did not abuse its discretion in sanctioning Penick under Rule 11, we do not reach the issue of whether the district court abused its discretion in finding Penick's conduct sanctionable pursuant to 28 U.S.C. 1927.

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for
Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of
<u>Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power</u>

Similarly, in the instant action, Rosenbaum knew from the day before he filed this lawsuit that Peer's claim was meritless. Rosenbaum continued to insist upon Peer's claims and represented in Plaintiff's April 18, 2006 Initial Disclosures and his May 5, 2006 Rule 11 Letter that he had evidence to support Peer's claim. Putting aside the fact that Rosenbaum should never have filed this lawsuit, Rosenbaum had a duty to dismiss it.

Finally, Rosenbaum has proffered no "evidence" to support Peer's claims nor conducted any significant discovery to support his claims apart from a mere 9 requests for admissions.

Although Rosenbaum withdrew himself before being served with a Rule 11 Motion, his conduct is clearly sanctionable under §1927, the Court's Inherent Power, and Fed. R. Civ. P. 11(c)(1)(B), for continuing to litigate a case with no factual basis and documentation revealing that Peer's case is meritless.

### **Rosenbaum's Media Play 3 Days Before State Hearing & 10 Days Before Primary Election**

Rosenbaum ignored the facts, and rushed to file and publicize allegations of Lewis' violations of the FCRA in violation of United States District Court for the Southern District of Florida Local Rule 77.2.A.7 (hereinafter "Local Rule 77). Local Rule 77 states:

> A lawyer or law firm associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, which a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will interfere with a fair trial and which relates
>
> > (a) Evidence regarding the occurrence or transaction involved.
> >
> > (b) The character, credibility, or criminal record of a party, witness, or prospective witness
> >
> > (c) The performance or results of any examinations or tests or the refusal or failure of a party to submit to such.
> >
> > (d)The lawyer's opinion as to the merits of the claims or defenses of a party, except as required by law or administrative rule.

Rosenbaum hastily filed this lawsuit a mere four (4) days after being retained, four (4) days before the State Hearing, eleven (11) days before the Primary, and he sought expedited

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power

service of the summons and complaint in this matter on Lewis. Rosenbaum's process server testified that he had to effectuate serve on Lewis quickly because of a hearing that was coming up.

This lawsuit was hastily publicized to the press, the same day it was filed, by Peer, Rosenbaum, and/or Malkus, even before the lawsuit made it into PACER and Lewis was served, in order to have the maximum publically negative effect on Lewis before the primary election.

On February 2, 2006, an article appeared in the Sun-Sentinel reporting that:

> **Rosenbaum and Malkus said they're pursuing a federal lawsuit against Lewis, claiming he broke the law by disclosing in his lawsuit information -- an address from Peer's credit report**.

(Emphasis added.)

There was no correction to this article with the Sun-Sentinel in the Sun-Sentinel online archives.

Rosenbaum's February 2, 2006 comment to the Sun-Sentinel clearly violates Local Rule 77. A statement from an attorney and officer of the court, who is speaking to the press about his knowledge of the law, is cast in the light of truth in the public arena. And his comment is not just any comment. This is Lionel Tate's former criminal defense attorney stating to the Sun-Sentinel and the voters of the City of Fort Lauderdale that Lewis broke the law, before the lawsuit had even been served, let alone adjudicated. All benefit of the doubt had been removed in the press that Lewis was innocent. There is no doubt that this comment would interfere with a fair trial, relates to the evidence or transactions, and is Rosenbaum's opinion as to the merits of Peer's claim.

Rosenbaum's comment did more than interfere with Lewis' fair trial; it was calculated to negatively impact Lewis' election pursuits to the benefit of the incumbent Naugle. Coupled with Malkus' February 4, 2006 comment reported by the Miami Herald "that it is a felony to obtain information from a consumer reporting agency under false pretenses," and one can only imagine why voters filled with images of Lewis in an orange jump suit did not vote for him.

Furthermore, Rosenbaum's comments are indeed bad faith bullying tactics. The Complaint Rosenbaum filed in this matter included an assertion that Lewis violated 15 U.S.C §1681 q which provides: "[a]ny person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under Title 18,

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power

imprisoned for not more than 2 years, or both." Rosenbaum's "full court" pronouncement that they were pursuing a civil action that has criminal penalties with proscribed jail time is unconscionable, and further violates Local Rule 77. And, again Rosenbaum has taken on the role of Byrne who: "threatened criminal prosecution to gain a civil advantage; n19 threatened to use the media as a sounding board in order to gain a civil advantage;…engaged in activities to subvert justice;…and threatened to send some of the Defendants i.e. the Nezhats back to their home country." Byrne v. Nezhat, 261 F.3d. 1075, 1088 (11th Cir. 2001). While Rosenbaum did not threaten to send Lewis back to Connecticut, he did threaten Lewis with criminal prosecution to gain a political advantage; did use the media to gain political advantages; and did engage in activities intending to and, in fact, subverting justice.

And, what makes Rosenbaum's conduct truly unconscionable is that he filed the Complaint seeking jail time and orchestrated the media play while knowing that the allegations contained in the complaint were, in fact, untrue. Peer's 2/2/06 credit report refutes Peer's claim. Rosenbaum, as an officer of the Court, made knowingly false statements to the press that could affect a fair trial of this matter in violation of Local Rule 77, and filed and pursued a complaint for criminal penalties knowing that Lewis did not obtain and/or publish information from Peer's credit report in derogation of §1927.

### After the Primary, Rosenbaum's Primary Purpose was to Conceal the Truth

As the Eleventh Circuit noted in Byrne v. Nezhat, 261 F.3d. 1075, 1132 (11th Cir. 2001):

> The importance of using the Rules to uncover bogus claims and defenses, thereby reducing the parties' dispute to its bare essentials, cannot be overemphasized.

After the Febuary 14th, 2006 election, Rosenbaum did not prosecute Peers' case with the exception of propounding a mere 9 Requests for Admission. Instead, Rosenbaum's primary purpose was to conceal the truth. In his efforts to conceal the truth, Rosenbaum harassed, intimidated, and/or threatened Lewis, who was acting as a pro se litigant; .sought delays; and successfully obstructed Lewis' quest to seek the truth through the discovery process.

### Rosenbaum's Rule 11 Letter and Baseless and Improper Threats

Rosenbaum served Lewis, who was acting as a pro se litigant, four (4) days late with a May 5, 2006 Rule 11 Letter threatening Lewis with sanctions for filing his Answer and

Case 0:06-cv-60146-EGT   Document 152   Entered on FLSD Docket 07/09/2007   Page 15 of 20

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for
Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of
Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power

Affirmative Defenses, and Counter-Complaint for an improper purpose to harass or to cause unnecessary delay or needless increase in the cost of litigation, and for his allegations and factual contentions which Rosenbaum asserted lacked evidentiary support.

The extortionist effect of this letter is blatant: pro se litigant, dismiss your claims and defenses or you will pay more than just by the loss of the election, but your wallet too. The irony of such letter is two-fold: Rosenbaum asserts that he conducted an inquiry showing Lewis' claims lack support while he possesses Peer's 2/2/06 credit report, and he takes the impositions of sanctions very seriously in federal court. Rule 11(c)(1)(A) provides in pertinent part:

> By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5…

Meanwhile, Rosenbaum threatens Lewis with sanctions if he does not withdraw his Answer, Affirmative Defenses, and Counter-Complaint without serving Lewis with a Rule 11 Motion in direct contravention of Rule 11's requirements. To date, Rosenbaum never ever served or filed a Rule 11 Motion in this matter. Rosenbaum's conduct clearly is conduct is that the Court's Inherent Power was designed to redress. Byrne at 1132.

**Rosenbaum's Sanctions for Communicating with the Judge about His Rule 11 Letter**

Having not received a response from Rosenbaum nor a Rule 11 Motion, Lewis as a dutiful pro se litigant mindful of the rules, in an abundance of caution, sought via correspondence to the Court, dated May 19, 2006, judicial notice that he was not served with a Rule 11 Motion as required, and the Court's guidance as to how the 21 days should be calculated in the absence of an actual Rule 11 Motion since Rule 11 did not address a situation where a letter was served without a motion.

Lewis' letter to the Court was an innocent inquiry that did not obstruct justice or interfere with the judicial process in this matter which was necessitated by Rosenbaum's failure to abide by the rules. Furthermore, the United States for the Southern District of Florida's Local Rule 7.7 (hereinafter "Local Rule 7.7) provides in pertinent part:

> Unless invited or directed by the presiding judge, attorneys and any party represented by an attorney shall not: (a) address or present to the Court in the form of a letter or the like any application requesting relief in any form, citing authorities, or presenting arguments:…

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for
Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of
Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power

Rosenbaum knew or should have knows that Local Rule 7.7 did not apply to Lewis who was unrepresented, and therefore Rosenbaum's threats of sanctions were purely harassment and further baseless attempts to intimidate Lewis.

### Rosenbaum's Bad Faith Delay and Obstruction Tactics

The Eleventh Circuit has opined that "under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation." Byrne at 1106.

Lewis sought to take Peer's and Rosenbaum's deposition as well as those persons listed on his Rule 26 disclosures in the latter part of June. On May 18, 2006, Lewis hand-delivered to Rosenbaum correspondence seeking to accommodate Rosenbaum's schedule, and asking him to respond by May 25, 2006 with the best dates for Peer and Rosenbaum to be deposed during the weeks of June 12th and June 19th, and for Rosenbaum to attend depositions of other third parties in the aforementioned time periods. Rosenbaum's aforementioned May 22, 2006 letter also threatened sanctions against Lewis if he made any attempt to depose Rosenbaum, and stated that his client was not available during the week of June 12 or June 19. However, Rosenbaum failed to propose alternative dates for any depositions. On June 16, 2006, the undersigned hand-delivered correspondence to Rosenbaum in an attempt to schedule depositions on dates available to Rosenbaum, and requesting that he provide her with his un-available dates in July by June 21, 2006. Rosenbaum failed to respond to the undersigned's correspondence and request for deposition dates, and instead withdrew.

Lewis was entitled to take depositions of Peer and others, but although he and the undersigned sought to coordinate deposition dates with Rosenbaum, due to Rosenbaum's failure to cooperate and dilatory and bad faith tactics, Lewis was not able to set his depositions until the end of the discovery period, and had to limit the number of depositions he desired in order to be compliant with the Court's Scheduling Order. Rosenbaum was in possession of at the very least Peer's 2/2/06 credit report, but due to his withdrawal managed to delay Lewis' receipt of same.

Counsel has a duty to coordinate deposition dates. United States District Court for the Southern District of Florida Local Rules have adopted the Discovery Practices Handbook in Appendix A., and Appendix II.(A.)(1) to such Local Rules states in relevant part:

A courteous lawyer is normally expected to accommodate the schedules of

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for
Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of
Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power

opposing lawyers.

However, Rosenbaum was evasive, refused to provide dates for his and Peer's availability, and threatened Lewis with further sanctions if he attempted to take his deposition.  By his threats of sanctions, refusal to coordinate deposition dates, through his withdrawal, and the extension of time he received for the Peer to provide his discovery responses, Rosenbaum prevented Lewis from taking his depositions until the end of the discovery period.

Rosenbaum should be sanctioned pursuant to §1927, and the Court's Inherent Power for his misconduct and dilatory tactics.

### §1927 Applicable to Rosenbaum as Peer's Former Counsel

Lewis and his Counsel believed Rosenbaum should be held liable for Rule 11 Sanctions based on the fact that the sole basis for Peer's action was the Emergency Complaint according to Plaintiff's Initial Disclosures, but, in an abundance of caution, they waited for Peer's discovery responses to see exactly what evidence Rosenbaum put forth for this frivolous action besides the Emergency Complaint. On June 19, 2006, the last day to serve Peer's responses to Lewis' Interrogatories and a week before Peer's responses to Lewis' Request for Production were due, Rosenbaum moved to withdraw from the case and sought a 45 day continuance of this case. Without being required to provide Peer's discovery responses, Rosenbaum was allowed to withdraw from this action before being served with a Rule 11 Motion.

Although Rosenbaum withdrew himself before his exposure to Rule 11 was completely revealed, Rosenbaum is liable for sanctions pursuant to §1927. Unlike a Rule 11 Motion, there is no 21 day safe harbor provision for §1927.  There is ample authority for the imposition of sanctions, pursuant to §1927, upon "former counsel," and/or after a Final Judgment has been entered, a Summary Judgment has been granted, and an involuntary dismissal[3].  For the

---

[3] *See* Lamanna-Berman v. Names & Addresses, Inc., 1998 U.S. Dist. LEXIS 6159 (N.D. Ill. 1998)  (After a summary judgment was granted summary judgment, Defendants sought fees against Plaintiff's Former Attorney pursuant to Rule 11 and §1927, and the District Court imposed sanctions pursuant to Rule 11 and §1927 against Plaintiff's Former Attorney as to Count II..  *See also* Steinhart v. Winn Group, Inc. 440 F.3d 1214 (10th Cir. 2006 (10th Cir. recognized that "section 1927 contains no safe harbor and separate motion requirements of Rule 11", and that "§1927 sanctions are not untimely if sought or imposed after final judgment." ); Ridder v. City of Springsfield, 109 F.3d 288, 295 (6th Cir. 1996) (A motion for sanctions pursuant to "§1927 is not

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power

aforementioned reasons, Rosenbaum should be held accountable for his bad faith misconduct which has vexatiously multiplied this litigation, burdened the Court and Lewis, and obstructed justice and Lewis' discovery efforts. This Honorable Court needs to sanction Rosenbaum pursuant to §1927 and send a message to the Bar that the Federal Courts will not tolerate being abused by the bad faith filing of frivolous actions for improper political purposes.

**Defendant Requests Court Initiated Imposition of Rule 11 Sanctions Against Rosenbaum**

Rule 11 is fatally flawed in that counsel may withdraw from the case before being served with a Rule 11 motion and without dismissing the case, thereby leaving the Defendant to bear the burden of continued costs and litigation for the former attorney's misdeeds[4]. Unlike Rule 11(c)(1)(A), Rule 11 (c)(1)(B) has no 21 day safe harbor period and can be imposed by the Court sua sponte. Rule 11 (c)(1)(B) provides:

> On Court's Initiative. On it is own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

The notes of the Advisory Committee on the 1983 Amendments to Rule 11 state that the authority to impose sanctions by the court's own motion:

> was made explicit in order to overcome the traditional reluctance of courts to intervene unless, requested by one of the parties. The detection and punishment of a violation of the signing requirement, encouraged by the amended rule, is part of the court's responsibility for securing the system's effective operation.

The notes of the Advisory Committee on the 1993 Amendments to Rule 11 state:

> The power of the court to act on its own initiative is retained, but with the condition that this be done through a show cause order. This procedure provides

---

predicated upon a finding a 'safe harbor' period, nor is the motion untimely if made after the final judgment in a case."; Hudson. (After summary judgment was granted, the District Court found Plaintiff's counsel liable for sanctions pursuant to §1927); Amlong at 1187 (After dismissal, sanctions were sought against the Amlongs, and the District Court ordered sanctions against the Amlongs pursuant to §1927);

[4] See Ridder at 295., quoting Justice Scalia's dissent the Supreme Court's adoption of the 1993 Amendments to Rule 11: Justice Scalia noted that "the 'safe harbor' provision allows for an offending attorney to 'escape with no sanction at all…Under the revised Rule, parties will be able to file thoughtless, reckless, and harassing pleadings, secure in the knowledge that they have nothing to lose." Dissenting Statement of Justice Scalia, 146 F.R.D. 507-08 (1993).

Case 0:06-cv-60146-EGT   Document 152   Entered on FLSD Docket 07/09/2007   Page 19 of 20

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power

> the person with notice and an opportunity to respond. The revision provides that a monetary sanction imposed after a court initiated show cause order be limited to a penalty payable to the Court and that it be imposed only if the show cause order is issued before any voluntary dismissal or an agreement of the parties to settle the claims made by or against the litigant….Since show cause orders will ordinarily be issued only in situations that are akin to a contempt of court, the rule does not provide a "safe harbor" to a litigant for withdrawing claim, defense, etc., after a show cause order has been issued on the court's own initiative.

The Defendant requests that this Honorable Court sanction Rosenbaum pursuant to Rule 11 on its own initiative for signing the Complaint, with knowledge and possession of Peer's 2/2/06 credit report; initiating this frivolous lawsuit for an improper purpose; and insisting upon Peer's frivolous and factually baseless claim with full knowledge that it was not tenable. The Federal Courts are not the pawns of abusive litigants. Rosenbaum's Ghost Ship Litigation has been allowed to impede justice for too long now.

## Conclusion

Rosenbaum knew that he was filing a lawsuit not grounded in fact and possessed evidence which contradicted Peer's claim. Then Peer, Malkus, Rosenbaum, and Naugle publically threatened Lewis with criminal penalties. When that did not result in Lewis dropping out of the race for Mayor and/or dropping the State Action, Rosenbaum threatened Lewis repeatedly with baseless sanctions. Lewis sought aggressively as a pro se litigant to prosecute his claims and defend against Peer's claims, but Rosenbaum sought delays and/or obstructed Lewis' quest to seek the truth throughout the discovery process, even though Rosenbaum had evidence contradicting Peer's claims. Instead of turning over Peer's credit report, and dismissing Peer's baseless claim as required by the rules and professional ethics, Rosenbaum withdrew himself from the case and thereby from the sanctions pursuant to a Rule 11(c)(1)(A) Motion, but not from sanctions pursuant to Rule 11(c)(1)(B) on the court's initiative. During his representation of Peer, Rosenbaum did more to condemn Lewis to the media, obstruct Lewis' discovery efforts, and delay the case than he did to prosecute Peer's claims.

Rosenbaum should be sanctioned pursuant to §1927, the Court's Inherent Power, and Fed. R. Civ. P. 11(c)(1)(B)for using the Federal Courts to continue to litigate Peer's case, knowing that Peer's case was clearly not tenable and never was; abusing the judicial process for improper

Peer v. Lewis, Case No. 06-60146 CIV-TORRES Consent Case
Defendant's Memorandum of Law in Support of Defendant, Daniel Warfield Lewis' Motion for Sanctions Against Plaintiff's Former Counsel, Richard L. Rosenbaum, Esq. and/or Law Offices of Richard L. Rosenbaum, Esq. Pursuant to 28 U.S.C. §1927, and the Court's Inherent Power

political purpose, and engaging in bad faith conduct subsequent to filing this action and throughout his representation of Peer in this matter as detailed above and in Defendant's Motion.

Dated: July 9, 2007.

Respectfully Submitted,

 s/Colleen Kathryn O'Loughlin
COLLEEN KATHRYN O'LOUGHLIN

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY on July 9, 2007, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served on July 9, 2007 as follows: service via hand-delivery to Richard L. Rosenbaum, Esq., Plaintiff's Former Counsel, Arnstein & Lehr L L P, 200 East Las Olas Boulevard, Suite 1700, Fort Lauderdale, Florida  33301 and via U.S. Mail on Scott Greenbaum, Esq., Plaintiff's Counsel, Law Office of Scott Greenbaum, 200 Southeast 18th Court, Fort Lauderdale, FL  33316, who is not authorized to receive electronically Notices of Electronic filing.

 s/Colleen Kathryn O'Loughlin
COLLEEN KATHRYN O'LOUGHLIN
FBN:  0042528
cailino@bellsouth.net
Colleen Kathryn O'Loughlin, P.A.
Post Office Box 4493
Fort Lauderdale, Florida  33338-4493
(954) 467-5505
Attorney for Defendant, Daniel Warfield Lewis