## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-60146-CIV-TORRES

CHRISTOPHER JAMES PEER,

      Plaintiff / Counter-Defendant,

v.

DANIEL WARFIELD LEWIS,

      Defendant / Counter-Plaintiff.

_____/

## OMNIBUS ORDER ON RULE 50 AND 59 MOTIONS

This matter is before the Court on three motions for directed verdict filed by Plaintiff / Counter-Defendant Christopher James Peer ("Peer"): (i) a Motion to Renew the Directed Verdict Pertaining to Compensatory Damages [D.E. 224]; (ii) a Motion to Renew the Directed Verdict Pertaining to Punitive Damages [D.E. 225]; and (iii) a Motion to Renew the Directed Verdict Pertaining to Legal Fees [D.E. 228]. Defendant / Counter-Plaintiff Daniel Lewis ("Lewis") filed responses to these motions [D.E. 232, 233, 236]. Peer did not reply.

We also review Peer's Motion for a New Trial and/or Judgment as a Matter of Law, in the Alternative of the Outcome of his Motion for Renewal of Directed Verdicts Pertaining to Legal Fees, and Punitive and Compensatory Damages [D.E. 227]. Lewis filed a Response and supplemental memorandum of law in opposition to the Motion for New Trial [D.E. 234, 235]. Peer did not reply.

All these matters are ripe for disposition. After a thorough review of the motions and the record, the Court will grant the motions in part and enter an amended judgment.

## I.  BACKGROUND

Lewis and Peer were candidates in the 2006 mayoral race in Fort Lauderdale, Florida.[1] A few months before the primary election, Lewis obtained a document — the Westlaw People Finder Historic Tracker Record for Christopher Peer ("Westlaw Document") — identifying Peer as living out of district.  On January 17, 2006, approximately one month before the primary election, Lewis challenged Peer's eligibility to run for mayor based on the city charter's six-month residency requirement.  Specifically, Lewis sought declaratory relief in state court, arguing that Peer's candidacy was unlawful because he was not a Fort Lauderdale resident.

In his state court complaint for declaratory relief, Lewis cited to the Westlaw Document.  However, he mistakenly identified it as a TransUnion credit report: "[A]n October 15, 2005 credit report by TransUnion, one of the three major credit bureaus, reported that [Peer's] current address is '18 Charter Drive, Wilmington, North Carolina 28403.'" *See Emergency Complaint for Declaratory Judgment Concerning Candidate Eligibility* [D.E. 1 at 7].  In fact, Lewis never actually used or possessed Peer's 2005 credit report by TransUnion. The only document in Lewis's possession was the Westlaw Document.  The mix-up occurred because the Westlaw Document listed TransUnion as a source of information.

The mention of Peer's credit report in a public filing prompted Peer to file a Complaint against Lewis in this federal court for violations of the Fair Credit Reporting Act ("FCRA"). The FCRA restricts the unauthorized access and use of personal credit reports, and Peer's Complaint argued that Lewis unlawfully procured "Peer's confidential credit report from TransUnion ... [and] used the credit report to damage Peer's reputation." [D.E. 1 at 2-3].  Filed

---

[1]    The trial testimony and court record provide the basis for the summary of facts that are material to the issues presented, stated in the light most favorable to Lewis, the non-moving party.

just eleven days before the primary election for mayor, Peer's FCRA Complaint was, predictably, the subject of several local newspaper articles and a great deal of controversy.

On February 14, 2006, the incumbent mayor (a non-party to this lawsuit) prevailed in the primary.  After losing the election, Lewis answered Peer's Complaint, denied the allegations in full, and filed a Counterclaim against Peer for abuse of process [D.E. 6].  Lewis alleged that Peer filed the FCRA Complaint in bad faith solely to tarnish Lewis's reputation. More specifically, Lewis claimed that negative publicity stemming from the FCRA Complaint irreparably harmed his chance of winning.  Lewis claimed that this was what Peer had intended.  And Lewis claimed that this was also part of an overall scheme, hatched by his political opponents, to have Peer run in the primary and further damage Lewis's ability to challenge the incumbent mayor.

Peer's FCRA Complaint and Lewis's abuse of process Counterclaim slowly worked their way through this Court as the litigants fought with one another at every turn.[2]  Though the details are not relevant to this Order and are already set forth in the record, on June 26, 2007, we struck Peer's pleadings after a repeated and unending series of discovery violations:

> "Plaintiff's pending complaint [D.E. 1] and pending Answer to the Counterclaim [D.E. 8] are hereby STRICKEN, except as to damages arising under the Counterclaim.  Judgment shall be entered at a later date in Defendant's favor on the Complaint.  Judgment shall not be entered on the Counterclaim until a trial on damages is conducted."

[D.E. 148 at 11].  On July 20, 2007, the also Court entered an Order Disqualifying Plaintiff's Counsel.  Peer proceeded to trial on the counterclaim on a *pro se* basis.

On October 18, 2007, the Court held a four-day jury trial on damages.  The only two witnesses that testified were Peer and Lewis.  Before the close of the evidence, Peer moved for

---

[2]      For example, there were in excess of ten motions for sanctions filed between the parties.

a "directed verdict" on Lewis's entitlement to punitive damages and legal fees.  Both motions were denied, and the jury returned a substantial damage award on the abuse of process claim. *See* Special Verdict Form [D.E. 221].  Specifically, the jury awarded Lewis the following: Campaign Expenditures ($16,000); Legal Expenses ($7,500); Injury to Reputation ($5,000); and Lost Earnings-Mayor Salary ($105,000).  The jury also found by clear and convincing that Peer had a specific intent to harm Lewis, and awarded punitive damages in the amount $657,000.

Strictly in accordance with the jury's verdict, the Court entered judgment on October 25, 2007 [D.E. 223] in Lewis's favor on Count I of the Counterclaim in the total amount of $790,500, plus post-judgment interest.  The Court reserved the issue of attorneys' fees for post-trial adjudication, and also formally entered judgment in Lewis's favor on all counts of Peer's original complaint.

Following the entry of judgment, Peer filed three separate Rule 50 "directed verdict" motions as to compensatory damages, legal fees, and punitive damages, as well as one Rule 59 motion for new trial that raised largely the same issues.  We will first address the Rule 50 motions for judgment as a matter of law.

## II.    ANALYSIS - RULE 50

Peer filed three separate Rule 50(b) "directed verdict" motions as to compensatory damages, legal fees, and punitive damages.  Three arguments raised by Peer are common to all three Rule 50(b) motions.  First, Peer claims that the application of damages for an abuse of process claim is "irrelevant" because Lewis's claim should have been one for malicious prosecution.  Second, Peer suggests that he was prejudiced by the Court's jury instructions.  Third, Peer contends that the jury disregarded Lewis's duty to mitigate damages.  Fourth, Peer argues that the jury award for loss of reputation, lost mayor's salary, and campaign expenses should be stricken because the evidence at trial did not establish a causal connection

between his FCRA Complaint and Lewis losing the election.  Finally, Peer's fifth argument

is that the jury's determination of punitive damages directly contradicts the jury instructions

because the award would be financially crippling.

Fed. R. Civ. P. 50 is the mechanism for defendants to challenge the sufficiency of a

plaintiff's evidence at and after the close of the case:

> (a)(1) If during a trial by jury a party has been fully heard on an issue and there
> is no legally sufficient evidentiary basis for a reasonable jury to find for that
> party on that issue, the court may determine the issue against that party and
> may grant a motion for judgment as a matter of law against that party with
> respect to a claim or defense that cannot under the controlling law be
> maintained or defeated without a favorable finding on that issue.

"The standard for granting a renewed motion for judgment as a matter of law under Rule 50(b)

is precisely the same as the standard for granting the pre-submission motion under 50(a)."

*Chaney v. City of Orlando,* 483 F.3d 1221, 1227 (11th Cir. 2007) (quoting 9A C. Wright and A.

Miller, *Federal Prac. & Procedure* § 2537 (2d ed. 1995)); *see also Nebula Glass Int'l, Inc. v.

Reichhold, Inc.,* 454 F.3d 1203, 1210 (11th Cir. 2006).  Further, "any renewal of a motion for

judgment as a matter of law under Rule 50(b) must be based on the same grounds as the

original request for judgment as a matter of law prior to the case being submitted to the jury."

*Chaney,* 483 F.3d at 1227 (quoting *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir.

2004)).

Thus, under both Rule 50(a) and 50(b), a moving party must meet a heavy burden in

order to prevail on a motion for judgment as a matter of law.  The standard of review for a

district court to grant the motion is whether "when the facts and inferences are viewed in the

light most favorable to the opposing party, 'point so strongly and overwhelmingly in favor of

one party the Court believes that reasonable men could not arrive at a contrary verdict.'"

*United States v. Vahlco Corp.,* 720 F.2d 885, 889 (11th Cir. 1983) (quoting *Boeing Co. v.

Shipman,* 411 F.2d 365, 374 (5th Cir. 1969)).  The court must "affirm the jury verdict unless

there is no legal basis upon which the jury could have found for [the plaintiff]." *Telecom Tech. Servs., Inc. v. Rolm Co.,* 388 F.3d 820, 830 (11th Cir. 2004); *see also Robbins v. Koger Props., Inc.,* 116 F. 3d 1441 (11th Cir. 1997) ("A mere scintilla of evidence is not sufficient to support a jury verdict.").

While the court must afford due deference to the jury's findings, it is axiomatic that such findings are not automatically insulated from review by virtue of the jury's careful and conscientious deliberation. *Johnson v. Clark*, 484 F. Supp. 2d 1242, 1245-46 (M.D. Fla. 2007). Rule 50 allows the trial court to remove issues from the jury's consideration "when the facts are sufficiently clear that the law requires a particular result." *Id.* (citations omitted).

Accordingly, if Lewis did not provide a legally sufficient evidentiary basis for a reasonable jury to find in his favor on his damage claims, we must grant Peer's motion for judgment as a matter of law, assuming of course that the issue was timely and properly preserved under the Rule. *See Pickett v. Tyson Fresh Meats, Inc.,* 420 F.3d 1272, 1278 (11th Cir. 2005) (citing *Cleveland v. Home Shopping Network, Inc.*, 369 F.2d 1189, 1192 (11th Cir. 2004)). On the other hand, we must deny Peer's motion for judgment as a matter of law if Lewis presented "enough evidence to create a substantial conflict in the evidence on an essential element" of his claim. *Pickett*, 420 F.3d at 1278 (citing *Bogle v. Orange County D. of County Comm'rs,* 162 F.3d 653, 659 (11th Cir. 1998) ("[I]n order to survive a defendant's motion for judgment as a matter of law ... the plaintiff must present evidence that would permit a reasonable jury to find in the plaintiff's favor on each and every element of the claim.")). To that end, we note that it is not the function of the Court to make credibility or factual determinations under the guise of Rule 50 review. *See also Jackson v. State of Alabama State Tenure Comm'n,* 405 F.3d 1276, 1281 (11th Cir. 2005). If there are conflicting inferences that can be drawn from that evidence, it is not the Court's role to pick the better

one.  Instead, all reasonable inferences from the evidence must be drawn in Lewis's favor.  *Id.; see also Daniels v. Twin Oaks Nursing Home,* 692 F.2d 1321, 1325 (11th Cir. 1982) (quoting *Continental Ore Co. v. Union Carbide Corp.*, 370 U.S. 690, 696, 82 S. Ct. 1404, 1409, 8 L. Ed. 2d 777 (1962) ("we are bound 'to give the [plaintiff] the benefit of all inferences which the evidence fairly supports even though contrary inferences might be reasonably drawn'")).

Similarly, if we disagree with the jury's assessment of damages, a federal court has no general authority to reduce the amount of a jury's verdict. *Kennon v. Gilmer*, 131 U.S. 22, 29, 9 S. Ct. 696, 33 L. Ed. 110 (1889).  The Seventh Amendment prohibits re-examination of a jury's determination of the *facts*, which includes its assessment of the extent of the plaintiff's injuries. *Id.* at 30 ("[A federal court may not] according to its own estimate of the amount of damages which the plaintiff ought to have recovered, ... enter an absolute judgment for any other sum than that assessed by the jury.").  To do so would deprive the parties of Seventh Amendment right to a jury. *Johansen v. Combustion Eng'g, Inc.,* 170 F.3d 1320, 1329 (11th Cir. 1999).[3]

If *legal* error is detected, however, the court has the obligation and the power to correct the error by vacating or reversing the jury's verdict. *Id.*  Where a portion of a verdict is for an identifiable amount that is not permitted by law, the court may simply modify the jury's verdict to that extent and enter judgment for the correct amount. *Johansen,* 170 F.3d at 1330 (citing *New York, L.E. & W.R. Co. v. Estill*, 147 U.S. 591, 13 S. Ct. 444, 454, 37 L. Ed. 292 (1983) (modifying a judgment when the jury improperly awarded interest)).  If a reduction in damages is necessitated by legal error, the reduction is not a remittitur and a new trial is not required. *Johansen*, 170 F.3d at 1330 (court may enter judgment reducing punitive damages

---

[3]      When a court finds that a jury's award of damages is excessive, however, it may grant the defendant a new trial or grant the plaintiff the option of a remittitur of damages. *See* Fed. R. Civ. P. 59.  *See infra* at 31-32.

award to comply with due process guidelines as a matter of law, without plaintiff's consent); *Corpus v. Bennett,* 430 F.2d 912, 917 (8th Cir. 2005) (allowing a reduction of nominal damages as a matter of law from $75,000 to $1 without a new trial).  The Seventh Amendment is not triggered if a damage award is reduced as a matter of law.  *See also Tronzo v. Biomet,* 236 F.3d 1342, 1351 (Fed. Cir. 2001) (as per *Johansen,* reduction of compensatory damages to maximum permitted under the law and the record permissible without ordering new trial or remittitur); *Central Office Telephone, Inc. v. American Telephone & Telegraph Co.,* 108 F.3d 981, 993 (9th Cir. 1997) (affirming post-trial order reducing a jury verdict of $13 million compensatory damages to approximately $1.2 million without a new trial option because "the magistrate judge did not reduce the award upon AT&T's motion for a new trial, but rather upon their motion for judgment as a matter of law."); *C.L. Maddox, Inc. v. Benham Group, Inc.,* 88 F.3d 592, 603 (8th Cir. 1996) ("When it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there, district courts possess the power to reduce the amount of the verdict accordingly.").

With these principles in mind, we address Peer's Rule 50(b) arguments.

### A.     *Peer is Liable for Abuse of Process Because His Pleadings Were Stricken*

Peer takes issue with the fact that Lewis filed a Counterclaim for abuse of process. Apparently he feels that Lewis should have styled this cause of action as a malicious prosecution claim.[4]  Peer argues as follows:

---

[4]     While some courts have viewed malicious prosecution as either the unlawful initiation or continuation of a suit, it properly is concerned only with maliciously causing process to issue.  In contrast, abuse of process is concerned only with the improper use of process once it has been issued.  *Bembry v. City of Tallahassee,* No. 05-CV-286-SPM, 2006 WL 1080676 at *4 (N.D. Fla. 2006).  An abuse of process claim consists of a "willful and intentional misuse of process for some wrongful and unlawful object or collateral purpose." *Id.* (quoting *Gause v. First Bank of Marianna,* 457 So. 2d 582, 584 (Fla. 1st DCA 1984)).

> [T]he application of any damages for an "Abuse of Process" claim [are] irrelevant to the case at hand.  It is Peer's understanding that the tort of "Abuse of Process" involves the actions of a party after the issuance of a complaint ... Even if Lewis clearly showed malicious ulterior motives by Peer, the issue would still be moot because "the maliciousness or lack of foundation of the asserted cause of action itself is actually irrelevant to the tort of abuse of process."

[D.E. 224 at 1-2; 225 at 1-2; 228 at 1-2] (internal citations omitted).

Peer, however, arguably waived the right to bring a Rule 50(b) Motion on this issue because he did not raise a motion for judgment as a matter of law under Rule 50(a) at the close of evidence at trial.  *Doe v. Celebrity Cruises, Inc.*, 394 F.3d at 903.  The purpose of the requirement that the initial Rule 50(a) motion be made before the case goes to the jury "is to assure the responding party an opportunity to cure any deficiency in that party's proof that may have been overlooked until called to the party's attention by a late motion for judgment." Fed. R. Civ. P. 50(a)(2) advisory committee notes (1991 amendment).  Although this Court will give leeway to *pro se* litigants on substantive matters, *pro se* litigants are still required to conform to the procedural rules. *See Wayne v. Jarvis*, 197 F.3d 1098, 1104 (11th Cir. 1999); *see also Brooks v. Britton*, 669 F.2d 665, 667 (11th Cir. 1982) (holding that *pro se* litigants are required to move timely for an extension of time in order to file a late notice of appeal).  During trial, Peer did not move for judgment as a matter of law based on Lewis's decision to sue for abuse of process instead of malicious prosecution.  Therefore, this Rule 50(b) argument – to the extent that Lewis could have cured the supposed error by introducing additional evidence at trial – was technically waived. *See Doe v. Celebrity Cruises, Inc.*, 394 F.3d at 903.

Nor did Peer raise any argument on any liability issue such that it could be liberally construed to be "closely related" to the argument that Lewis was pursuing the wrong cause of action before the jury. *See Ross v. Rhodes Furniture, Inc.,* 146 F.3d 1286, 1289-90 (11th Cir. 1998) ("If the grounds argued in a motion under Rule 50(a) are "closely related" to those

argued in a Rule 50(b) motion, then setting aside a jury's verdict is no surprise to the non-movant.   No Seventh Amendment right is ambushed. [*National Indus., Inc. v. Sharon Steel Corp.,* 781 F.2d 1545, 1549-50 (11th Cir. 1986).]   But if the new and old grounds vary greatly, then a trial judge may not rely on the new grounds to set aside the jury's verdict. *See* [*Sulmeyer v. Coca Cola Co.,* 515 F.2d 835, 845-46 (5th Cir. 1975).]   If they do vary greatly and the trial court relies upon the new grounds to set aside the jury's verdict, we will reverse.").

To the extent one would construe Peer's argument as raising a pure legal error in the judgment through a Rule 50(b) motion, which is possible as discussed *supra* at 7-8, then as a practical matter Peer's argument still fails because the particular claim definition is largely irrelevant where the case was tried solely on damages.   Peer's Answer to Lewis's Counterclaim was stricken, and the jury did not have to adjudicate the issue of liability. [D.E. 148, 210].   The Court correctly made the liability finding on the abuse of process claim as a matter of law against Peer.   Whether the cause of action was styled as an abuse of process claim or a claim for malicious prosecution, the damages would be the same.   So even if Lewis had pursued in this case the related, but technically wrong, cause of action, Peer is foreclosed from raising that challenge once liability was determined against him.   Peer suffered no material harm because the damages assessed by the jury would also have been assessed under a malicious prosecution label.

### B.   *Peer Was Not Prejudiced by the Jury Instructions*

Additionally, Peer moves for judgment as a matter of law based on a jury instruction explaining that the Court had already adjudicated the issue of liability:

> This Court has already made the determination that, due to procedural issues, Lewis has satisfied the first three elements of the [abuse of process] claim.   In other words, you are instructed that Peer is liable for the claim of abuse of process.

*See Court's Instructions to the Jury* [D.E. 220 at 4]. Peer hypothesizes that, as a result of this instruction, the jury "may have been led to believe" that they *had* to award damages. [D.E. 224 at 2; 225 at 2; 228 at 2].

Peer's argument fails on its merits because our subsequent instruction as to how the jury was to apply damages cured this alleged problem:

> You must determine for each category whether Lewis has presented evidence of such damage and whether Peer's actions were the legal cause of that damage. By the Court identifying these categories, you should not assume that I am instructing you to find that damages must be assessed for each particular category. Rather, in considering the issue of Lewis's damages, for each category of loss claimed you should assess the amount you find to be justified by the greater weight of the evidence as full, just and reasonable compensation for Lewis's damages, no more and no less.

*Id*. at 6. Because it is well established that a jury is presumed to follow the court's instructions, *Tang How v. Edward J. Gerrits, Inc.,* 961 F.2d 174, 179 (11th Cir.1992), the jury understood that the Court was not directing it to find that a particular category of damages had to be assessed. Indeed, the jury's verdict reflects that because the jury in fact did not award Lewis all the damages that he requested.

Peer's argument also fails on procedural grounds. Peer takes the position that he is entitled to relief under Rule 50(b) because the jurors erroneously believed that a damage award was mandatory. Again, Peer did not raise this issue before the close of evidence as a Rule 50(a) motion, thus technically foreclosing a Rule 50(b) motion now. Peer could have preserved the issue for post-trial or appellate review under Rule 59. Erroneous and prejudicial jury instructions may be remedied through a a Rule 59 motion for a new trial. *See Tierney v. Black Bros. Co.,* 852 F. Supp. 994, 1003 (M.D. Fla. 1994) ("A court's grant of a new trial motion may be predicated on various grounds, including: erroneous jury instructions."); *Christopher v. Cutter Labs.*, 53 F.3d 1184, 1190-91 (11th Cir. 1995).

Notably, Peer did not raise this issue in his motion for a new trial. But even if he had, and we interpret this pending Rule 50(b) issue as a Rule 59 motion, Peer's argument would still fail because he never objected to the wording of the instruction prior to its submission to the jury. During the charge conference, and following changes made to the instructions at both parties' request, neither party objected to the final wording of the instructions. Peer thus waived his right to challenge the instruction following the verdict. *See* Fed. R. Civ. P. 51(c); *Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1329 (11th Cir. 1999) (party who fails to raise an objection to a jury instruction or verdict form prior to jury deliberations waives its right to raise the issue on appeal, citing *Wood v. President of Spring Hill Coll.,* 978 F.2d 1214, 1221 (11th Cir. 1992)).

Finally, Peer cannot show that the Court's instructions to the jury were so erroneous as to constitute plain error. The jury instructions ultimately submitted to the jury, both individually and as a whole, did not misstate the law or mislead the jury to Peer's prejudice, thus no abuse of discretion occurred that could give rise to any plain error. *See Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1543 (11th Cir. 1996) ("So long as the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instructions.").

### C.    *The Jury Did Not Disregard Lewis's Duty to Mitigate Damages*

Peer had the burden at trial to show that Lewis breached his duty to mitigate damages if Lewis was reasonably able to do so. *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-CIV-21113, 2007 WL 3232270, at *13 (S.D. Fla. 2007) (citing *Messer v. E.F. Hutton & Co.*, 833 F.2d 909, 921 (11th Cir. 1987) ("It is well established under Florida law that a part cannot recover damages he could have prevented through the exercise of reasonable care and diligence.")); *Graphic Assoc., Inc. v. Riviana Restaurant Corp.,* 461 So. 2d 1011, 1014 (Fla. 4th

DCA 1984) (duty to mitigate damages prevents a party from recovering those damages inflicted by a wrongdoer which the injured party "could have avoided without undue risk, burden, or humiliation.") (citing Restatement (Second) of Contracts § 305(1) (1979)).

Peer argues that the jury failed to take into account Lewis's duty to mitigate damages:

> The jury completely overlooked Lewis' duty to mitigate circumstances, as much so as Lewis himself disregarded his obligation to seek corrective action when available. Peer has shown clear and convincing evidence that Lewis knew of the potential of Peer's suit as early as 2/1/2006 and chose to ignore that potential as idle talk. Lewis could have averted and possibly created no need for Peer's suit. by simply citing Westlaw people tracker (if that was the original source of the reference) in his amended complaint on 2/1/2006, Peer's complaint may not have been filed on 2/3/2006. Lewis claims that he was in possession of the Westlaw people tracker as early as 1/12/2006 yet never offered it as documentary evidence to Peer and counsel, the court, or the media until 7/12/2006.

[D.E. 224 at 7; 225 at 5-6; 228 at 4-5]. Peer's argument focuses on Lewis's purported failure to take precautionary measures to avoid a lawsuit.

Clearly, Peer misconstrues the duty to mitigate damages. The 50(b) Motion focuses on comparative fault, a non-issue in light of the fact that this was a case tried solely on damages. Regardless, we need not address Peer's argument because he is procedurally barred from bringing a Rule 50(b) motion on this issue. He did not raise a "failure to mitigate" argument in his Rule 50(a) motion during trial. *Doe v. Celebrity Cruises, Inc.*, 394 F.3d at 903. Nor could he have as a practical matter because the burden of proof was Peer's, not Lewis's. Peer has no Rule 50 argument at this point with respect to his mitigation of damage theory. Moreover, the Court properly instructed the jury on Peer's mitigation defense, and competent substantial evidence existed in the record to find that Lewis did not in fact fail to meet his obligation to mitigate. For all these reasons, this argument is meritless.

### D.    *Compensatory Damages*

Peer next argues that the damages for attorneys' fees, tarnished reputation, lost mayor's salary, and campaign costs should be stricken.  He takes the position that Lewis did not present sufficient evidence to support the jury's verdict and that the awards were based purely on speculation.  Damages based on uncertainties, contingencies, or speculation cannot be recovered.  *See generally* 22 Am. Jur. 2d Damages § 331.  The principle that will not allow the recovery of damages when their existence rests solely on speculation applies both to the fact of damages, and to their cause.  *See, e.g., Saporito v. Bone*, 195 So. 2d 244 (Fla. 2d DCA 1967) (upholding jury instruction that "a person is not permitted to recover any element of damages ... unless such person has proved the particular result for which compensation is claimed with reasonable certainty"); *see also Nebula Glass,* 454 F.3d at 1212 ("Under the certainty rule, *which applies in both contract and tort actions*, recovery is denied where the fact of damages and the extent of damages cannot be established within a reasonable degree of certainty.") (quoting, with emphasis in original, *Miller v. Allstate Ins. Co.,* 573 So. 2d 24, 27-28 (Fla. 3d DCA 1990) and also citing Restatement (Second) of Torts § 912 (1982)).

### 1.    *Attorneys' Fees and Injury to Reputation*

Lewis presented sufficient evidence at trial to support a compensatory award for both attorneys' fees incurred in the defense of his claim as well as loss of reputation.  There was no factual dispute as to the amount of out-of-pocket fees Lewis incurred arising solely from the defense of the FCRA lawsuit, $7,500.  Having been instructed that Peer was liable for abuse of process, and having been instructed as to the categories of damage that may flow from such a claim, the jury could find that Lewis's out-of-pocket fees were damages that proximately flowed from Peer's tortious conduct.  There was competent and substantial evidence in the record to sustain that award.

The same is true for the evidence supporting the award for injury to reputation.  Lewis admitted into evidence several newspaper articles that discussed Peer's FCRA lawsuit.  Lewis testified that the publication marred his reputation in the Fort Lauderdale community.  Granted, the articles at issue were not published nationwide, but they were published in the local newspapers in the area where Lewis lived and worked, and where they could be presumed to cause the most damage to his reputation.  This evidence is more than sufficient to support a modest $5,000 award for damages to Plaintiff's reputation.[5]

Arguably, Peer could have asserted that there was a break in the causal chain between Peer's filing of the FCRA lawsuit and the subsequent newspaper publications.  At trial, Lewis did not introduce evidence that Peer influenced or encouraged the publication of the articles on the FCRA lawsuit.  The journalists' independent decisions to write the articles might qualify as intervening, superceding causes of Lewis's damages.  However, Peer failed to raise that argument at trial in a Rule 50(a) motion, therefore the 50(b) argument as to causation would have been barred.  The Eleventh Circuit holds that a district court has no authority under Rule 50(b) to rule *sua sponte* on issues not raised by the parties.  *Crawford v. Andrew Sys., Inc.*, 39 F.3d 1151, 1154 (11th Cir. 1994) ("Just as we would not permit defendants who had made no previous motion to ask the court to rule on the legal sufficiency of the evidence once a verdict had been returned against them, we cannot permit the district court to so rule *sua sponte*."); *Ross v. Rhodes Furniture,* 146 F.3d at 1289; *Doe v. Celebrity Cruises, Inc.*, 394 F.3d at 903.

But even if Peer had raised this waived argument, we note as an aside that a plaintiff in a cause of action for abuse of process may recover damages for all injuries proximately

---

[5]       Moreover, the jury instruction on damages for injury to reputation was accepted without objection. *See Court's Instructions to the Jury* [D.E. 220 at 5].

caused by the defendant's abuse of process. *See Bothmann v. Harrington*, 458 So. 2d 1163, 1170 (Fla. 3d DCA 1984). Peer filed a lawsuit against his political opponent days before an election. It was entirely foreseeable that this action would trigger newspaper coverage. And injury to reputation is certainly a foreseeable consequence of negative publicity.

In any case, because there is sufficient evidence in the record, and Peer has not preserved any arguments to discount that evidence, we therefore deny Peer's Motion to strike the jury's award of $5,000 for injury to reputation.

### 2. Lost Earnings - Mayor's Salary

At trial, Lewis testified that he had a "good chance" of winning the election, but that Peer's actions deprived him of a fair election. He further testified that the mayor of Fort Lauderdale receives a salary of $35,000 per year over a three-year term (for a total of $105,000).[6] We instructed the jury that they were allowed to award damages for "[lost] earnings, and any working time lost in the past, and any loss of ability to earn money in the future, or any loss of ability to earn money sustained in the past, and any such loss in the future." *See Court's Instructions to the Jury* [D.E. 220 at 5]. Interpreting this instruction liberally, the jury awarded Lewis $105,000 in lost future earnings for the mayor's salary.

In the Rule 50(b) Motion, Peer argues that Lewis failed to present sufficient evidence at trial to support this award:

> During the course of the trial Lewis produced no concrete evidence to validate any claim of damages in regards to the 2006 election. Lewis did offer speculation, which was not definitive as to his chances in the election, by expressing his opinion that he stood a "good chance.". . . Lewis further did not produce any data that even suggested that he stood a slight chance of winning the mayoral position.

---

[6]     Lewis also testified that he suffered business losses in the amount of $200,000 to $300,000, but he failed to corroborate this claim to any meaningful degree and the jury did not award damages for lost business.

[D.E. 224 at 3].

Lewis first argues that the Court cannot consider this argument because Peer did not preserve the issue by raising a Rule 50(a) argument with respect to the mayoral salary prior to the close of all evidence. *See Doe v. Celebrity Cruises, Inc.*, 394 F.3d at 903. Nevertheless, we strike the jury's award of lost mayor's salary on our own accord because we find, as a matter of law, that an individual cannot recover damages for a lost election.

"In short, the general attitude of courts asked to consider election disputes . . . has been one of great caution. Intervention has come only in rare and extraordinary circumstances . . . [and] has never included the grant to defeated candidates of monetary compensation." *Hutchinson v. Miller*, 797 F.2d 1279, 1287 (4th Cir. 1986). Damages for a lost election are considered "too speculative and conjectural" and thus cannot be awarded by a court. *Southwestern Publ'g Co. v. Horsey*, 230 F.2d 319, 322-23 (9th Cir. 1956) (holding that "the loss of an election is not compensable in damages in a libel action, being too uncertain and too speculative"); *Chrysler Corp. v. Todorovich*, 580 P.2d 1123, 1134 (Wyo. 1978) (damages resulting from a lost election in the amount of the lost salary in public office are "remote, uncertain and conjectural or speculative damages;" plain and prejudicial error to permit the testimony of an expert witness as to why plaintiff lost an election); *Aycock v. Padgett*, 516 S.E. 2d 907, 910 (N.C. Ct. App. 1999) ("This is, in essence, a suit to recover damages for a lost election. We do not consider it the place of this court to engage in a post-election analysis of the decisions made by the voters of Black Mountain in this or any other election."); *Beverly v. Observer Pub. Co.*, 77 S.E. 2d 80, 81 (Ga. Ct. App. 1953) (holding that special damages for the loss of a public office in an election are "too remote and speculative to be recoverable").

At trial, Lewis did not identify a single voter who was otherwise inclined to vote for him but did not do so because of Peer's lawsuit. Even if he had, such evidence would have been

insufficient for a jury to causally connect Peer's FCRA complaint to the Fort Lauderdale mayoral race.[7]  Theoretically, Lewis needed to call every citizen who voted against him in the primary, shown how these individuals shifted their vote based on Peer's actions, and then established that enough votes were changed to alter the outcome of the election.  As a practical matter, of course, that is impossible.  That scenario also presents an insurmountable obstacle for any court to address.  Because there are "not less than a thousand factors which enter into the vagaries of an election," it is impossible for Lewis to establish that Peer actually caused his loss in the primary election, *a fortiori* he can never prove actual damages.

For these very reasons, the Fourth Circuit elaborated on the principle behind not awarding damages for a lost election:

> The unique nature of [a lost election] case convinces us that the requested intervention is inappropriate under any circumstances, for plaintiffs' suit for damages strikes us as an inapt means of overseeing the political process.  It would provide not so much a correction of electoral ills as a potential windfall to plaintiffs and political advantage through publicity. . . .  We can imagine no scenario in which this gain is the appropriate result of the decision to pursue elected office, and we can find no other case in which a defeated candidate has won such compensation.  Nor do we believe, in light of the multitude of alternative remedies, that such a remedy is necessary either to deter misconduct or to provide incentives for enforcement of election laws.

*Hutchinson v. Miller*, 797 F.2d at 1287.  Federal courts do not sit to award post-election monetary damages to defeated candidates.  Monetary compensation as a form of post-election relief is "fundamentally inappropriate." *Id.*

---

[7]      In *Robb v. Lincoln Publishing, Inc.*, 683 N.E. 2d 823, 841 (Ohio App. 12 Dist. 1996), a clerk of court that was defeated in a reelection campaign brought a defamation action against a newspaper. The newspaper published a defamatory article, as well as several damaging political advertisements that were paid for the clerk's opponent. The state appellate court noted, in dicta, that there was sufficient evidence to demonstrate that the clerk lost his reelection as a proximate result of the defendant's libelous publications.  However, the court ultimately vacated the special damage award for lost salary and benefits because "the jury cannot fairly be said to have determined that the ad alone cost [the plaintiff] the election." *Id.* In vacating the damage award, the court implicitly recognized that a plaintiff cannot establish causation in a lost election case.

Accordingly, we find that the jury could not award Lewis the salary that he would have earned as the mayor of Fort Lauderdale.  The Court could have addressed this possibility before trial through the filing of a motion for summary judgment, but Peer acting *pro se* did not file such a motion.  The Court could also have addressed the argument in response to a Rule 50(a) motion during trial, but Peer failed to make such a motion and thus the Court did not deal with the issue at that point and left it to post-trial review following the jury's verdict.

We turn back here then to the procedural question raised by Lewis that Peer forever waived his right to make such a challenge on a Rule 50(b) renewal motion when he did not preserve the issue prior to trial.  Were this a case where Lewis could have introduced sufficient evidence to sustain his burden, but did not do so based on a lack of notice from Peer that the evidence submitted was deficient, then Lewis's waiver argument would be largely unassailable.[8]  But the issue here is not one of sufficiency of evidence.  It is a pure legal issue: whether a party can recover tort damages on the premise that he or she would have won an election but for the defendant's tortious conduct.  The Court finds that, as a matter of law, and based on the authorities cited above, a plaintiff in these circumstances is foreclosed from recovering this type of tort damage.  Therefore, the failure to file a Rule 50(a) motion is not technically an obstacle to the entry of this ruling now, as explained in detail *supra* at 7-8.  In short, Lewis's failure to introduce sufficient evidence of causation is of no consequence.

---

[8]      Having said that, we note that one could have argued in good faith that Peer did preserve the issue by raising a Rule 50(a) motion addressing the recoverability of attorneys' fees in the case.  By doing so, again *pro se*, one could argue that Peer was challenging the legal sufficiency of Lewis's damage claims, one of which was his claim to the mayoral salary.  Frankly, we think that is a stretch, but one could argue that the mayoral salary was "closely related" to the attorneys' fee motion, just like damages for loss of reputation and goodwill were held by the Eleventh Circuit to be closely related to lost profits damages.  *See National Indus. v. Sharon Steel,* 781 F.2d at 1545, 1549-50.  We need not definitively reach that finding because we believe we can address the merits of Peer's argument as a matter of law to correct pure legal error in the Court's current judgment.

Rather, the fact that it is impossible to prove causation necessitates a reduction in damages as a matter of law. The Seventh Amendment is not offended by this reduction because the issue is one of law, and not fact. *See, e.g., Johansen,* 170 F.3d at 1330. We therefore vacate the jury's award of $105,000 for lost mayor's salary.[9]

### 3.    *Campaign Costs*

In the context of a lost election, there is no principled way to distinguish the expectation damages (i.e. lost mayor's salary) from the reliance damages (i.e. wasted campaign costs). The jury awarded campaign costs as damages stemming from a lost election. There is no factual dispute that those campaign costs would have been expended in the ordinary course of Lewis's campaign for mayor. Lewis argued, and the jury agreed, that the campaign costs were wasted following Peer's tortious conduct that made it impossible for Lewis to win. Thus, Lewis sought reimbursement of his campaign costs to place him back in the position he would have been but for the tortious conduct.

But to award campaign costs, we would first need to determine that Peer's actions caused Lewis to lose the election. If the tortious conduct did not proximately cause Lewis to lose, then campaign costs that would have been incurred in the ordinary course could not be reimbursable. Again, however, we cannot do so as a matter of law. *Hutchinson v. Miller*, 797 F.2d at 1287. The jury could not award under the law any damages proximately tied to the lost election. The campaign costs, like the mayoral costs, are not reimbursable otherwise. In light of the above discussion, we must also strike the jury's award of $16,000 for campaign

---

[9]        We note that we are addressing this matter within the context of the Rule 50 discussion based on *Johansen* and other similar cases discussing the principle in the Rule 50 context. Arguably, we could have also dealt with the issue within the context of Rule 59(e) that entitles the Court to amend a judgment to correct a clear legal error. *See, e.g., Bogart v. Chappell,* 396 F.3d 548, 555 (4th Cir. 2005); *Templet v. HydroChem, Inc.,* 367 F.3d 473, 478-79 (5th Cir. 2004).

costs. Neither expectation damages nor reliance damages are recoverable in this case based on Peer's abuse of process.

### E.   *Punitive Damages*

Under Florida law, a defendant may be liable for punitive damages if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. Fla. Stat. §§ 768.72., 768.725.  Ordinarily, a punitive damage award may not exceed the greater of three times the amount of the compensatory damage award, or the sum of $500,000.  Fla. Stat. § 768.73(1)(a).  However, if the jury determines that the defendant had a specific intent to harm the plaintiff, and determines that the defendant's conduct did in fact harm the plaintiff, there is no cap on punitive damages. Fla. Stat. § 768.73(1)(c).

At trial, Peer moved for a "directed verdict" under Rule 50(a) and argued, in no specific terms, that based on the evidence presented, Lewis was not entitled to punitive damages.  We denied that motion and sent the issue to the jury.  The jury found that Lewis had a "specific intent to harm" and awarded $657,000 in punitive damages. *See Special Verdict Form* [D.E. 221 at 2].

In his 50(b) Motion, Peer again contests punitive damages, and maintains that the jury's damage award was excessive for three reasons: (i) there was no evidence that he (Peer) benefitted financially from filing the FCRA complaint; (ii) the punitive award would be financially crippling; and (iii) the award bears no reasonable relationship to the compensatory damages. [D.E. 225 at 4-5].  Lewis responded at length by merely recapping the evidence presented at trial as justification for the punitive damage award [D.E. 223 at 10-17].[10]

---

[10]   Lewis also argues that Peer waived his right to bring a Rule 50(b) motion on this issue because he failed to raise it at trial.  Although the arguments are not word for word identical, as stated earlier the Eleventh Circuit has demonstrated a willingness to overlook

Logically we must first inquire whether Lewis presented sufficient evidence at trial to allow a jury to find that Peer's conduct warranted punitive damages.  If Lewis did meet his burden of proof, we must then address whether the punitive award is "excessive" under federal law pursuant to *BMW of North America, Inc. v. Gore*, 517 U.S. 519, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996).  Finally, we must determine if the award is excessive under Florida law.

### 1.   *Lewis Sufficiently Proved an Entitlement to Punitive Damages*

At trial, Lewis explained to the jury that he obtained a document — the Westlaw People Finder Historic Tracker Record for Christopher Peer ("Westlaw Document") — identifying Peer as living out of district.  The Westlaw Document listed TransUnion as a source of information.  In his state court complaint for declaratory relief, Lewis cited to the Westlaw Document, but accidentally identified it as a TransUnion credit report.  Lewis testified credibly that he never actually used or possessed Peer's TransUnion credit report.

When Peer subsequently confronted Lewis about the reference to the TransUnion credit report in the state court complaint, Lewis explained the mix-up.  In fact, Lewis filed an amended complaint in state court that removed reference to the TransUnion credit report.  Peer nevertheless commenced his FCRA claim, despite knowing that Lewis never actually obtained or used his TransUnion credit report.  Consequently, Lewis argued that Peer intentionally filed this lawsuit to taint the election for mayor.  The jury clearly agreed,

---

some technical deficiencies in regard to the content of a Rule 50(b) motion so long as the issues raised in the Rule 50(a) motion were closely related to the issues raised in the Rule 50(b) motion.  *See National Indust.,* 781 F.2d at 1549-50; *Ross v. Rhodes Furniture,* 146 F.3d at 1289; *see also Auto-Owners Inc. Co. v. Southeast Floating Docks, Inc.*, No. 05-CV-334-ORL-31JGG, 2006 WL 2598765, at *4 (M.D. Fla. 2006); *Splitt v. Deltona Corp.*, 662 F.2d 1142 (5th Cir. 1981) (affirming grant of off-topic motion for directed verdict as to punitive damages because defendant had objected to the jury charge on the same ground, and therefore the purpose of Rule 50 had been served because all parties were on notice of defendant's concern).  We find here that Peer sufficiently put Lewis on notice that he was objecting to punitive damages, and therefore Peer did not waive his right to object to punitive damages in this Rule 50(b) motion.

determined that Peer had a specific intent to harm Lewis, and awarded Lewis punitive damages. *See Special Verdict Form* [D.E. 221 at 2].   There is competent and substantial evidence in the record that, based on the entry of judgment for Lewis on liability, supported the jury's finding that Peer intentionally pursued litigation in a wrongful manner to accomplish a purpose for which it was not designed.   There was substantial evidence from which the jury could find that Peer was acting with ulterior motives and willfully his claim to hurt Lewis's chances of success in the mayoral election.

We, therefore, find that Lewis presented clear and convincing evidence to support the jury's finding that Peer specifically intended to harm Lewis.   We therefore deny Peer's Rule 50(b) motion to strike the punitive damage award.

### 2.    *Reduction of the Punitive Award Under Federal Law*

The due process clause prohibits a state from imposing a "grossly excessive" punishment on a tortfeasor. *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 454, 113 S. Ct. 2711, 125 L. Ed. 2d 366 (1993).   A review of a punitive damage award must include consideration of three guideposts to determine whether the award is unconstitutionally excessive:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003) (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996)).   We do not view these "guideposts" as an "analytical straitjacket," *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 81 (1st Cir. 2001), and primarily aim to eliminate the risk that a defendant is punished arbitrarily or without fair notice of the possible consequences of his actions. *See Action Marine, Inc. v. Continental Carbon, Inc.,* 481

F.3d 1302, 1318 (11th Cir. 2007) (citing *Gore,* 517 U.S. at 574) (noting that due process requires a person to have "fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose")).

In fact, "a court has a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause." *Johansen*, 170 F.3d at 1331. (citing *BMW*, 517 U.S. at 585, 116 S. Ct. 1589).  One obvious remedy is to issue a remittitur if we believe the jury's award is unreasonable on the facts.  Alternatively, if we reduce the jury's verdict to the maximum permitted under the Constitution in this particular case, then we can enter judgment for that amount as a matter of law. *Johansen*, 170 F.3d at 1331 (finding that a court proceeds under Rule 50, not Rule 59, in the entry of judgment for a constitutionally reduced award and that "the Seventh Amendment is not implicated in this legal exercise.").  The Court finds, for the reasons that follow, that the punitive award is unconstitutionally excessive and should be lowered to the maximum amount allowable under the Constitution.

To find the constitutional "upper limit," we turn to *BMW*.  The first *BMW* guidepost – the degree of reprehensibility of a defendant's misconduct – is the most important indicator of the reasonableness of a punitive damages award. *State Farm v. Campbell,* 538 U.S. at 419; *Action Marine,* 481 F.3d at 1318 ("Of the three guideposts, the reprehensibility of a defendant's conduct is the most relevant").  The reprehensibility determination "must begin with the identification of the state's interest and an assessment of the strength of that interest," which are questions of law. *Action Marine*, 481 F.3d at 1318 (quoting *Johansen*, 170 F.3d at 1334).  Lewis does not identify a particular "state interest" though we can readily assume that the relevant interest served in this case preventing frivolous lawsuits.  That

concern, however, is first addressed by affording Lewis a cause of action for abuse of process in the first place.

Among the other factors to consider in determining a party's degree of reprehensibility are whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm v. Campbell,* 538 U.S. at 419.    Frankly, the only factor that bodes in Lewis's favor is the jury's finding that Peer specifically intended to harm Lewis.  The harm caused here was purely economic.  Peer's conduct was not tantamount to a reckless disregard of the health or safety of Lewis, nor was  Lewis was not a financially vulnerable target.  Clearly we cannot tag Peer as a recidivist as he only filed one lawsuit.  Gauging Peer's conduct, we cannot conclude that his actions were exceedingly reprehensible.

Turning to the second guidepost, this inquiry focuses on the "ratio" between compensatory and punitive damages to assess whether a punitive award is "both reasonable and proportionate to the amount of the harm to the [plaintiffs] and the general damages recovered."  *Bogle v. McClure*, 332 F.3d 1347, 1362 (11th Cir. 2003).  In this case, Lewis was awarded $133,500 in compensatory damages and $657,000 in punitive damages at a constitutionally permissible 5:1 ratio.  After striking the awards for lost mayor's salary and campaign costs, the total compensatory award is now $12,500, and we are left with a ratio of 53:1.

Ratios greater than single digit multipliers may comport with due process where "a particularly egregious act has resulted in only a small amount of economic damages."  *See Campbell*, 538 U.S. at 425 (citing *Gore*, 517 U.S. at 582).  A higher ratio might also be justified

in cases where the injury is hard to detect or the monetary value of non-economic harm might have been difficult to determine. *Id.* The precise award in any case, of course, must be based on the facts and circumstances of the defendant's conduct and the harm to the plaintiff. *Action Marine*, 481 F.3d at 1231 (citations omitted). In *Bogle,* for instance, a ratio of 4-to-1 was upheld, but the Court emphasized that there is no way to "identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award." *Id.* (quoting *Campbell*, 538 U.S. at 424); *see also Action Marine,* 481 F.3d at 1320-23 (affirming 5-to-1 ratio in case involving intentional environmental injury against multiple plaintiffs (defendant was assessed a $17.5 million punitive award as against a $3.2 million award)). While the Supreme Court in *Campbell* declined to impose a bright-line limit on punitive damage awards, it did go so far as to explain that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." 538 U.S. at 424 (reversing a 145:1 punitive to compensatory ratio). Taking these principles into account, Peer's actions do not warrant a punitive damage award in excess of a single digit multiplier.

Finally, the third guidepost is the disparity between the punitive damages award and the "civil penalties authorized or imposed in comparable cases." *Gore*, 517 U.S. at 575. There is no relevant civil sanction under Florida state law for filing a frivolous lawsuit. Therefore, the third guidepost is inconsequential. *Campbell*, 538 U.S. at 428.

In assessing all the factors set forth in *Gore*, we find that the $112,500 is the maximum amount of punitive damages the Constitution permits in this case. Such an award, with a 9:1 ratio, adequately reflects the degree of reprehensibility here and takes into account the proportionality analysis required by the Constitution. It also obviously constitutes the greatest award possible utilizing the single-digit ratio suggested in *State Farm*.

### 3.   *Reduction of the Punitive Award Under Florida Law*

We must finally consider whether this constitutionally reduced punitive award complies with substantive Florida law.  Florida law requires that the "manifest weight of the evidence does not render the amount of punitive damages assessed out of all reasonable proportion to the malice, outrage, or wantonness of the tortious conduct." *See Engle v. Liggett Group, Inc.*, 945 So. 2d 1246, 1263 (Fla. 2006) (citing *Arab Termite & Pest Control of Fla., Inc. v. Jenkins*, 409 So. 2d 1039, 1043 (Fla. 1982)).  Additionally, a punitive award must bear some reasonable relationship to the defendant's ability to pay and should not result in economic castigation or bankruptcy of the defendant. *See Engle*, 945 So. 2d at 1264 (citing *Bould v. Touchette*, 349 So. 2d 1181, 1186 (Fla. 1977)).  The Florida Supreme Court adopted the premise set forth in *Gore* that "a review of the punitive damages award includes an evaluation of the punitive and compensatory amounts awarded to ensure a reasonable relationship between the two." *See Engle*, 945 So. 2d at 1264.

A reduced compensatory award of $12,500 and a constitutionally reduced punitive award of $112,500 fully comports with Florida law.   The punitive award, after its constitutional reduction, is not "out of all reasonable proportion" to Peer's misconduct and his abuse of process.  Peer argues that the punitive award is financially crippling, but provides no evidentiary support.  We have no basis to assume that the punitive award will result in "economic castigation" or "bankruptcy," therefore we cannot further reduce the award on those grounds.  Finally, by reducing the punitive damage award to the constitutional "upper limit," we essentially ensured a reasonable relationship between the punitive to compensatory amounts.  We hold that a 9:1 ratio between punitive and compensatory damages complies with *Engle*.

### III.    ANALYSIS - RULE 59

Peer's Rule 59 motion largely duplicates the arguments in his Rule 50(b) motions.  He again argues that the abuse of process claim is "irrelevant," and reiterates his Rule 50(b) arguments concerning mitigation of damages, the jury's failure to follow the Court's instructions, and speculative damages.  Construed liberally in the context of a Rule 59 motion, we take Peer's arguments to mean that the entire damages verdict was against the great weight of the evidence and that it was excessive.  Peer also adds one argument – that he is entitled to a new trial under Rule 59 because of potential jury tampering.

Pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, a court may grant a new jury trial "'for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a).  A party may seek a new trial by arguing that "the verdict is against the great weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S. Ct. 189, 85 L. Ed. 147 (1940); *Steger v. General Elec.* Co., 318 F.3d 1066, 1081 (11th Cir. 2003).  However, a motion brought pursuant to Rule 59 may not "relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) (motion to amend or alter judgment was essentially a motion to reconsider the district court's prior summary judgment order).

Resolution of a motion for a new trial is committed to the discretion of the trial court.  *See Montgomery v. Noga*, 168 F.3d 1282, 1295 (11th Cir. 1999).  When ruling on a motion for a new trial, the judge must determine "if in his opinion, 'the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice, even though there may be

substantial evidence which would prevent the direction of a verdict.'" *Insurance Co. of N. America v. Valente*, 933 F.2d 921, 922-23 (11th Cir. 1991) (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)).  "[T]o assure that the judge does not simply substitute his judgment for that of the jury, . . . we have noted that new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence." *Id.* at 923 (quoting *Hewitt,* 732 F.2d at 1554).  The judge must protect against manifest injustice in the jury's verdict, but it is not his role to assess credibility where conflicting testimony has been presented during the trial.  *Id.* at 1558-59. Instead, the judge must defer to the jury on the weight to be given to each witness's testimony. *Id.*

Finally, when a court finds that a jury's award of damages is excessive it may grant the defendant a new trial.  *Johansen,* 170 F.3d at 1329 (citing *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433, 116 S. Ct. 2211 (1996)); Fed. R. Civ. P. 59.  In the alternative, the court can order remittitur and reduce the damages. *See, e.g., Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1310 (11th Cir. 1990); *Wilson v. Taylor,* 733 F.2d 1539, 1549–50 (11th Cir. 1984), *overruled on other grounds, Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701 (1989).  The decision whether to grant a new trial or remittitur on the grounds of excessive damages is a matter within the sound discretion of the district court.  *E.g., Middlebrooks v. Hillcrest Foods, Inc.,* 256 F.3d 1241, 1249 (11th Cir. 2001); *Simon v. Shearson Lehman Bros., Inc.,* 895 F.2d at 1310.  Pursuant to the Seventh Amendment, a plaintiff must be given the option of a new trial in lieu of remitting a portion of the jury's award.  *See* U.S. Const. amend. VII; *Johansen*, 170 F.3d at 1329 ("[N]o judgment for a remittitur may be entered without the plaintiff's consent because the Seventh Amendment prohibits the court from substituting its judgment for that of the jury's regarding any issue of fact.").

### A.   *Verdict Was Not Against The Great Weight of the Evidence*

This Court reduced the compensatory award to $12,500 because damages stemming from a lost election were inappropriate as a matter of law.   We then reduced the punitive damage award to $112,500 because it is the maximum allowable award under the Constitution.   Notwithstanding these reductions, we may order a new trial if the reduced verdict is against the weight of the evidence.  Fed. R. Civ. P. 59.

We find that the reduced compensatory award was not against the great weight of the evidence.  Lewis introduced several newspaper articles discussing Peer's FCRA lawsuit, and testified that the publication tarnished his reputation.  As discussed above, the articles were published where Lewis lived and worked, and a reasonable juror could determine that Peer's action did in fact damage Lewis's reputation.  This evidence is more than sufficient to support a modest award of $5,000.   Lewis also testified that he spent $7,500 on legal fees, a fact uncontested at trial.   Accordingly, the great weight of the evidence supports the total compensatory award of $12,500.

With respect to the entitlement to punitive damages, the jury weighed the evidence, determined that Peer had a specific intent to harm Lewis, and awarded Lewis punitive damages. *See Special Verdict Form* [D.E. 221 at 2].  The Court sees no basis on this record to grant Peer a new trial on the liability finding of the punitive damages award, which has now been reduced to $112,500.  Peer sued Lewis for violations of the FCRA.  Peer testified that he filed his lawsuit against Lewis in good faith.  Lewis offered conflicting  testimony that Peer intentionally filed the lawsuit in bad faith solely to taint the election for mayor.  The jury had the right to discount Peer's testimony, in part based upon the jury's personal evaluation of his credibility and good faith, and credit the testimony of Lewis.  That is precisely a jury's function, and why the Court carefully instructed the jury on all the appropriate standards to

consider in making that evaluation.  It bears repeating that courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable. *Narcisse v. Illinois Cent. Gulf R. Co.,* 620 F.2d 544, 548 (5th Cir. 1980).

The Court properly instructed the jury (without objection) on the elevated level of proof that they had to measure the request for punitive damages.  The Court's verdict form properly required the jury to specifically make the findings necessary under Florida law to award punitive damages (again without objection).  Therefore, the jury's findings are factually sustainable based on the evidence and legally supportable based on Florida law. *See* Fla. Stat. §§ 768.72, 768.73.  Most importantly, we must remember that the Court's discretion to grant a new trial on the weight of the evidence is highly limited in cases, like this one, where there are hotly disputed factual issues at play.  The Eleventh Circuit has explained this rationale as follows:

> Courts fairly agree, however, that in certain situations a trial court should grant greater deference to a jury verdict.  Thus, when the trial involves simple issues, highly disputed facts, and there is an absence of "pernicious occurrences," trial courts should be considerably less inclined to disturb a jury verdict.  Accordingly, review of motions that have been granted in such cases will be more rigorous.  On the other hand, in cases involving complex issues, facts not highly disputed, and events arguably marred by error, trial courts have more freedom to evaluate independently the verdict.  *See Conway v. Chemical Leaman Tank Lines, Inc.,* [610 F.2d 360, 367 (5th Cir. 1980)]; *O'Neil v. W. R. Grace & Co.,* 410 F.2d 908, 913-14 (5th Cir. 1969); *Lind v. Schenley Industries, Inc.,* [278 F.2d 79, 90-91 (3rd Cir. 1960)]; 11 Wright and Miller, *Federal Practice and Procedure* § 2806, at 44.

*Williams v. City of Valdosta,* 689 F.2d 964, 974 (11th Cir. 1982).

The Court finds that there has been no miscarriage of justice here.  The jury's verdict is not seriously in error based upon the evidence presented.  The issues were hotly disputed and ably presented to the jury.  And there was no error, or at least no prejudicial or harmful error, that marred or tainted the jury's verdict.  Accordingly, the Court sees no basis to grant

the motion for new trial with respect to the jury's finding, based on clear and convincing evidence, that Peer is liable for punitive damages in this case.  *See also Conway v. Chemical Leaman Tank Lines, Inc.,* 610 F.2d 360, 367 (5th Cir. 1980) ("To conclude, the evidence was profuse, somewhat fragmentary, and conflicting in critical areas.  Given a jury's undoubted power to sift the evidence before it and to believe or disbelieve portions of the testimony of various witnesses (or even of the same witness) in constructing its own view of what most probably happened, this jury could have reached a number of different conclusions, all of which would have sufficient support in this evidence to be upheld.").

Therefore, Peer's Rule 59 motion, to the extent he argues that the jury's findings were contrary to the great weight of the evidence, must be denied.

### B.   *Reduced Damages Are Not Excessive*

Where a court finds that a jury's award of damages is excessive, it may grant the defendant a new trial. *Gasperini,* 518 U.S. at 433.  A party who assails the amount of a verdict as being excessive  has the burden of showing it is unsupported by the evidence, or that the jury was influenced by passion or prejudice. *Bould v. Touchette*, 349 So. 2d 1181, 1184 (Fla. 1977) (quoting *Talcott v. Holl*, 224 So. 2d 420, 422 (Fla. 3d DCA 1969)).  Florida law determines whether a jury award is excessive, while federal law governs the procedural question of whether a new trial is warranted if the damages are found to be excessive.  As Florida law recognizes, there is an element of speculation in most tort cases:

> Where recovery is sought for a personal tort, or where punitive damages are allowed, we cannot apply fixed rules to a given set of facts and say that a verdict is for more than would be allowable under a correct computation.  In tort cases damages are to be measured by the jury's discretion.  The court should never declare a verdict excessive merely because it is above the amount which the court itself considers the jury should have allowed.  The verdict should not be disturbed unless it is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate.

*Bould,* 349 So. 2d at 1184-85.

Given the jury's finding that Peer specifically intended to harm Lewis, we cannot say that a total net award of $125,000, following the Court's reduction of the award as a matter of law under Rule 50, is so inordinately large to as to exceed the maximum limit of a reasonable jury award.  Therefore, we deny Peer's Rule 59 motion for a new trial on the grounds that the reduced damage award is itself excessive or contrary to the great weight of the evidence.

### C.   *Potential Jury Tampering*

Peer finally claims that he noticed a member of Lewis's trial team conversing with one of the jury members.  He argues that "[t]his interaction of one of Lewis' legal team, coupled with the unusual amount award for the punitive damages is of concern." [D.E. 227 at 7].  We can summarily dispose of this argument because Peer failed to raise this issue before the jury rendered its verdict.  The first allegations of jury tampering are in this Rule 59 motion.

Absent exceptional circumstances that call into question the integrity of a trial, a party waives any objection to juror misconduct unless it makes a timely objection. *See Williams v. Marriot Corp.*, 864 F. Supp. 1168, 1173 (M.D. Fla. 1994) (citations omitted); *Garcia v. Murphy Pac. Marine Salvaging Co.*, 476 F.2d 303, 306 (5th Cir. 1973) (dicta) ("Of course, a party, with knowledge of a juror's misconduct, must make a timely objection and is not permitted to take his chances no a favorable verdict and if unfavorable get a second bite at the apple.").  Where a party knows of juror misconduct or bias before the verdict is returned, but fails to share this knowledge with the court until after the verdict is announced, the misconduct may not be raised as a ground for a new trial. *See United States v. Bolinger*, 837 F.2d 436, 439 (11th Cir. 1988).

Indeed Peer acknowledges that he failed to raise this issue in a timely fashion. We simply cannot overlook this misstep, notwithstanding his *pro se* status.  Frankly, it is not clear

that this supposed conversation even took place, let alone resulted in improper influence, because the jury's verdict is supported by the evidence.  Assuming the conversation did take place, Peer had full knowledge of this conversation and chose to take his chances with the jury. *Upton v. Harrison*, 68 F.2d 232, 234 (4th Cir. 1934) ("Having been silent when it was his duty to speak, he will 'not be heard to speak when it is his duty to be silent.'").

## IV.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED and ADJUDGED**:

1.      Peer's Motion to Renew the Directed Verdict Motion Pertaining to Compensatory Damages [D.E. 224] is **GRANTED IN PART** and **DENIED IN PART**.  We grant the motion only to the extent that, as a matter of law, the Court must strike the jury awards for campaign contributions ($16,000) and lost earnings for the Mayor's salary ($105,000).  The jury award for injury to reputation remains intact, together with the award for lost attorneys' fees.  An amended judgment reflecting the modified compensatory damage award will be entered.  We deny the motion as to all the remaining arguments raised that are procedurally barred and/or substantively meritless.

2.      Peer's Motion to Renew the Directed Verdict Motion Pertaining to Punitive Damages [D.E. 225] is **GRANTED IN PART** and **DENIED IN PART**.  We grant the motion only to the extent that, as a matter of law, the Court must reduce the punitive damage award following the entry of a modified compensatory damage award.  An amended judgment reflecting the modified compensatory damage award will be entered.  We deny the motion as to all the remaining arguments raised that are substantively meritless.

3.      Peer's a Motion to Renew the Directed Verdict Motion Pertaining to Legal Fees [D.E. 228] is **DENIED**.

4.      Peer's Motion for a New Trial and/or Judgment as a Matter of Law, in the

Alternative of the Outcome of his Motion for Renewal of Directed Verdict Motions Pertaining

to Legal Fees, and Punitive and Compensatory Damages [D.E. 227] is **DENIED**.

   **DONE AND ORDERED** in Chambers at Miami, Florida, this 13th day of May, 2008.

EDWIN G. TORRES
United States Magistrate Judge