## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 06-60146-CIV-TORRES

CONSENT CASE

CHRISTOPHER JAMES PEER,

      Plaintiff/Counter-Defendant,

v.

DANIEL WARFIELD LEWIS,

      Defendant/Counter-Plaintiff.

_____/

### ORDER DENYING DEFENDANT/COUNTER-PLAINTIFF'S
### MOTION FOR VACATION OF REFERENCE TO MAGISTRATE

This matter is before the court on Defendant/Counter-Plaintiff Daniel Warfield Lewis' ("Lewis") Motion for Vacation of Reference to Magistrate [D.E. 294], filed April 7, 2011; Plaintiff's Former Counsel Richard L. Rosenbaum's ("Rosenbaum") Response [D.E. 300], filed May 5, 2011; and Lewis' Reply [D.E. 303], filed May 12, 2011. The Court has considered the motion, the response, the reply, related authorities submitted by the parties, and the pertinent portions of the record in this case. For the reasons that will be discussed below, the Motion for Vacation of Reference to Magistrate is **DENIED**.

## I.  BACKGROUND [1]

Lewis and Peer were candidates in the 2006 mayoral race in Fort Lauderdale, Florida.  A few months before the primary election, Lewis obtained a document—the Westlaw People Finder Historic Tracker Record for Christopher Peer ("Westlaw Document")—identifying Peer as living out of district.  On January 17, 2006, approximately one month before the primary election, Lewis challenged Peer's eligibility to run for mayor based on the city charter's six month residency requirement.  Specifically, Lewis sought declaratory relief in state court, arguing that Peer's candidacy was unlawful because he was not a Fort Lauderdale resident.

In paragraph 19 ("¶19") of his state court complaint for declaratory relief, Lewis cited to the Westlaw Document.  However, he mistakenly identified it as a TransUnion credit report: "What is more, an October 15, 2005, credit report by TransUnion, one of the three major credit bureaus, reported that [Peer's] current address is '18 Charter Drive, Wilmington, North Carolina 28403.'" [D.E. 1 at 7].

On February 1, 2006, the state court held a hearing on Lewis' complaint and dismissed the complaint for ineffective service of process.  At this time Lewis was represented by Robert Malove, and Peer was represented by Richard L. Rosenbaum of the Law Offices of Richard L. Rosenbaum ("Rosenbaum").  After the state court hearing, there was a "heated discussion" in the hallway of the courthouse, and

---

[1] Some background facts have been taken from this Court's recitation of the facts in *Peer v. Lewis*, 2008 WL 2047978, at **1-2 (S.D. Fla. May 13, 2008), *aff'd*, 2009 WL 323104, *1 (11th Cir. Feb. 10, 2009) (per curiam), and from the Eleventh Circuit's recitation of the facts in *Peer v. Lewis*, 606 F.3d 1306, 1308-11 (11th Cir. 2010). Facts pertinent to the instant Motion specifically have also been included.

Malove and his law clerk told Rosenbaum and Peer that ¶19 of Lewis' complaint was inaccurate because Peer's address was obtained from the Westlaw Document and not from Peer's credit report. The mix-up occurred because the Westlaw Document listed TransUnion as a source of information. Later that same day, Malove amended Lewis' state court complaint to delete ¶19's reference to any credit report and served the amended complaint on Peer. Sometime on February 1 or February 2, 2006, Peer met with Rosenbaum to discuss Lewis' amended state court complaint and determine whether to bring a claim under the Fair Credit Reporting Act ("FCRA"), which restricts the unauthorized access and use of personal credit reports. [D.E. 42, Ex. 1 at 34-39]. On February 2, 2006, Peer obtained a copy of his credit report and faxed it to Rosenbaum. Peer's credit report showed that Lewis never accessed it. [*Id.* at 30].

The next day, February 3, 2006, Peer, with Rosenbaum acting as his attorney, filed suit against Lewis in this Court for a violation of the FCRA. Rosenbaum prepared and filed Peer's complaint based on ¶19 of Lewis' state court complaint and "suspicious activity" on Peer's credit report. The complaint argued that Lewis unlawfully procured "Peer's confidential credit report from TransUnion . . . [and] used the credit report to damage Peer's reputation." [D.E. 1 at 2-3]. Filed just eleven days before the primary election for mayor, Peer's FCRA Complaint was, predictably, the subject of several local newspaper articles and a great deal of controversy.

On February 14, 2006, the incumbent mayor (a non-party to the lawsuit) prevailed in the primary. After losing the election, Lewis answered Peer's

Complaint, denied the allegations in full, and filed a Counterclaim against Peer for abuse of process.  [D.E. 6].  Lewis alleged that Peer filed the FCRA Complaint in bad faith solely to tarnish Lewis' reputation.  More specifically, Lewis claimed that negative publicity stemming from the FCRA Complaint irreparably harmed his chance of winning.  And Lewis claimed that this was also part of an overall scheme, hatched by his political opponents, to have Peer run in the  primary and further damage Lewis' ability to challenge the incumbent mayor.

Peer's FCRA Complaint and Lewis' abuse of process Counterclaim slowly worked their way through this Court.  On June 14, 2006, attorney Colleen Kathryn O'Loughlin filed a Notice of Attorney Appearance for Lewis.  [D.E. 14].  Citing a breakdown in the attorney-client relationship, Rosenbaum filed a motion to withdraw as Peer's attorney on June 19, 2006.  [D.E. 15].  The Motion was granted on June 21, 2006.  [D.E. 18].  Rosenbaum filed a similar motion to withdraw as attorney of record on the Countersuit, which was granted on August 21, 2006.  [D.E. 52, 67].

On July 20, 2006, Heather A. Zardus ("Zardus") of Barry G. Roderman & Associates, P.A., ("Roderman") filed a Notice of Appearance on behalf of Peer.  [D.E. 25].  The following day, Scott Greenbaum of The Law Office of Scott Greenbaum, P.A., ("Greenbaum") filed a Notice of Appearance as Co-Counsel on behalf of Peer. [D.E. 26].  Peer was deposed on July 25, 2006.  Immediately prior to the start of Peer's deposition, Roderman gave Lewis' counsel a copy of Peer's February 2, 2006, credit report.  In his deposition, Peer testified that he knew before he filed his

federal complaint that Lewis had amended his state court complaint to delete ¶19's reference to a TransUnion credit report.

On August 18, 2006, Lewis moved for summary judgment on Peer's complaint, arguing that Peer's claim lacked evidentiary support. On September 8, 2006, the original district judge, James I. Cohn, filed an Order of Recusal transferring the case of District Judge Adalberto Jordan. [D.E. 92]. Peer responded to the motion on September 12, 2006. In the response, Peer, through his counsel, cited the offending ¶19 as support, despite the fact that it had not existed as part of Lewis' state court complaint since February 1. The response made no mention of the fact that Lewis had long since amended his state court complaint.

Later that same day, Lewis' counsel complied with Federal Rule of Civil Procedure 11(c)(2)'s safe harbor provision by notifying Roderman and Greenbaum that Lewis would file a Rule 11 motion for sanctions unless they withdrew the response.

Magistrate Judge Lurana S. Snow certified the case for transfer to Magistrate Judge Edwin G. Torres on September 13, 2006. [D.E. 97]. After a status conference on October 3, 2006, Zardus on behalf of Peer, and Lewis on his own behalf, signed a Notice of Right to Consent to Disposition of a Civil Case By a United States Magistrate Judge—Consent to Exercise Jurisdiction By a United States Magistrate Judge, which stated:

> In accordance with the provisions of 28 U.S.C. § 636(c), the under-signed parties voluntarily consent to have a United States Magistrate Judge conduct all further proceedings in the case, including the trial and order the entry of final judgment.

[D.E. 112]. It was then ordered by Judge Jordan that the case "be referred to the Honorable Edwin G. Torres, United States Magistrate Judge, for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c), Fed R. Civ. P. 73, and the foregoing consent of the parties." [*Id*.]

On October 10, 2006, Lewis filed his motion for Rule 11 sanctions. Roderman sought leave to withdraw as counsel on October 11, 2006, and his motion was granted on October 31, 2006. Greenbaum did not withdraw and, after failing to respond to numerous court orders, was sanctioned for reasons other than pursuing a frivolous case. The Court entered an Order Disqualifying Plaintiff's Counsel, discharging Greenbaum, on June 20, 2007.

On June 26, 2007, the Court struck Peer's complaint and answer to Lewis' abuse of process counterclaim as a sanction for Greenbaum's disregard for this Court's order. [D.E. 148 at 11]. On July 9, 2007, Lewis moved for sanctions against Rosenbaum pursuant to Rule 11, 28 U.S.C. § 1927, and the court's inherent power.

On October 18, 2007, the Court held a four-day jury trial on damages for Lewis' abuse of process counterclaim. The only two witnesses that testified were Peer and Lewis. Before the close of evidence, Peer moved for a "directed verdict" on Lewis' entitlement to punitive damages and legal fees. Both motions were denied, and the jury returned a substantial damage award on the abuse of process claim. [D.E. 221]. Strictly in accordance with the jury's verdict, the Court entered judgment on October 25, 2007, in Lewis' favor on Count I of the Counterclaim. [D.E. 223].

Following the entry of judgment, Peer filed three separate Rule 50 "directed verdict" motions as to compensatory damages, legal fees, and punitive damages, as well as one Rule 59 motion for new trial that raised largely the same issues. The Court granted the first Rule 50 motion only to the extent that, as a matter of law, the Court was required to strike the jury awards for campaign contributions and lost earnings for the Mayor's salary. The second Rule 50 motion was granted only to the extent that, as a matter of law, the Court was required to reduce the punitive damage award following the entry of a modified compensatory damage award. The third Rule 50 motion regarding legal fees and the Rule 59 motion for a new trial were denied. [D.E. 243]. Lewis appealed the reduction, and the Eleventh Circuit affirmed this Court's order. *See Peer v. Lewis*, 2009 WL 323104, at *1 (11th Cir. Feb. 10, 2009).

While the appeal was pending, this Court addressed the collateral matters of Lewis' October 10, 2006, and July 9, 2007, motions for sanctions against Rosenbaum, Roderman, and Greenbaum. [D.E. 118, 151]. This Court denied Lewis' motions for sanctions against Rosenbaum on January 14, 2009, holding that (1) Rosenbaum had a good faith basis to file the complaint, and (2) Rosenbaum did not act in bad faith. This Court did not address the merits of Lewis' motion for sanctions against Greenbaum and Roderman.

Lewis appealed this determination. The Eleventh Circuit held that Lewis' motion for Rule 11 sanctions as against Rosenbaum was untimely because this Court had already rejected the offensive pleading at the time Lewis moved for sanctions. *Peer v. Lewis*, 606 F.3d 1306, 1313 (11th Cir. 2010). It further held that

sanctions against Rosenbaum were not appropriate under 28 U.S.C. § 1927 "because Rosenbaum did not engage in any dilatory tactics nor did he multiply any proceeding." *Id.* at 1314.

The Eleventh Circuit, however, construed the record differently on appeal as to Rosenbaum's good faith in participating in the inception of the litigation. The Court reversed and remanded this case for this Court "to determine whether to impose sanctions on Rosenbaum [under the court's inherent power] and, if so, the extent of those sanctions." *Id.* at 1316. Such a finding in this Court must begin with the Eleventh Circuit's opinion that "Rosenbaum acted in bad faith when he knowingly filed a frivolous complaint." *Id.* Finally, The Eleventh Circuit vacated and remanded the portion of this Court's order regarding Lewis' Rule 11 motion for sanctions against Greenbaum and Roderman for this Court's consideration in the first instance. *See id.* at 1316-17.

After the case was remanded, Rosenbaum filed a Motion for an Evidentiary Hearing, arguing that at the time Rosenbaum filed the original FCRA claim there was reason to believe that Lewis had obtained Peer's credit report for a private investigator. Furthermore, Rosenbaum argues that this Court suggest to the Eleventh Circuit that the record that was before it was incomplete; as a result, the court should reconsider its finding that Rosenbaum acted in bad faith. [D.E. 289].

Following Rosenbaum's motion, Lewis' filed a Notice of Non-Consent on March 10, 2011, stating that Roderman, Greenbaum, and Rosenbaum had not consented to magistrate judge jurisdiction as parties. [D.E. 293]. According to Lewis, Roderman and Greenbaum had only consented as attorneys, and not as

parties to a post-judgment sanctions proceeding.  And Rosenbaum had withdrawn as Peer's counsel before the status conference during which consent to magistrate jurisdiction was officially agreed upon.

Lewis filed the instant Motion for Vacation of Reference to Magistrate on April 7.  In the motion, Lewis claims that: (1) consent to Magistrate Judge Torres has been vacated since the case returned to this court on remand from the Eleventh Circuit; (2) consent does not extend to post-judgment sanctions proceedings; and (3) there is no magistrate jurisdiction without the consent of all parties, and Rosenbaum, Roderman, and Greenbaum have not consented to magistrate jurisdiction.  It is Lewis' assertion that all parties should be given the option to proceed before an Article III judge or a magistrate.

Rosenbaum filed a Notice of Right to Consent to Disposition of a Civil Case by a United States Magistrate Judge—Consent to Exercise Jurisdiction by a United States Magistrate Judge [D.E. 295] on April 11, 2011.

## II.   ANALYSIS

The Federal Magistrate Act provides that "[u]pon consent of the parties, a full-time United States magistrate judge . . . *may conduct any or all proceedings in a jury or nonjury civil matter* and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court."  28 U.S.C. § 636(c)(1) (emphasis added).  "Unlike nonconsensual referrals of pretrial but case-dispositive matters under § 636(b)(1), which leave the district court free to do as it sees fit with the magistrate judge's recommendations, a § 636(c)(1) referral gives

the magistrate full authority . . . all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003).

The analogous provision of Federal Rule of Civil Procedure 73(a) states that a magistrate "may exercise the authority provided by . . . § 636(c) and may conduct any or all proceedings including a jury or non-jury trial, in a civil case." Fed. R. Civ. P. 73(a). The rule thus incorporates by reference the jurisdictional provision of § 636(c) but more clearly indicates that any proceeding in a civil case may be conducted by a magistrate judge sitting with the consent of the parties. *See* Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 3072 (2d ed.) ("Wright & Miller"). The magistrate judge's authority when presiding by special designation—and with the consent of the parties—is that of the district court; he or she therefore may perform all of the functions of a district judge. Once consent has been given for a full referral under 28 U.S.C. § 636(c), the district judge's supervisory authority is limited to consideration of timely motions to vacate the referral. *Acuity v. North Central Video, LLLP*, 468 F. Supp. 2d 1071, 1072-73 (D.N.D. 2006) (citing *Roell*, 538 U.S. at 585).

## A. *Legal Standard*

Federal Rule of Civil Procedure 73(b) provides that "[o]n its own for good cause—or when a party shows extraordinary circumstances—the district judge may vacate a referral to a magistrate judge." Fed. R. Civ. P. 73(b)(3); *see Rivera v. Rivera*, 216 F.R.D. 655, 659 (D. Kan. 2003) (citing 28 U.S.C. § 636(c)(4); *Fulton v. Robinson*, 289 F.3d 188, 199 (2d Cir. 2002); *Dixon v. Ylst*, 990 F.2d 478, 480 (9th Cir. 1993)); *see also Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282,

292 (5th Cir. 2002).  The Senate Judiciary Committee has explained that the section

of the Federal Magistrate Act that Rule 73(b)(3) references, § 636 (c)(4):

> [A]uthorize[s] a district judge to vacate a reference of a civil case.  ***
> This language is intended to permit in extraordinary circumstances
> the trial before a district judge of a matter otherwise before a
> magistrate.  This removal power is to be exercised only when it is
> appropriate to have the trial before an Article III judicial officer
> because of the extraordinary questions of law at issue and judicial
> decision making is likely to have wide precedential importance.  It is
> not intended that this subsection be used to remove routinely certain
> categories of cases.  As made clear above, if a magistrate is designated
> for trials in any particular type of case, he must be designated for all
> types of matters."

S. Report No. 96-74, at 14 (1979).  Here, the Court must apply the "extraordinary

circumstances" standard because it is a party who has moved to vacate this Court's

reference of the case to the magistrate judge.

   While the standard of "extraordinary circumstances" has not been precisely

defined, this Court agrees with the district court's finding in *Rivera* that it is

sensible to construe this standard consistent with the notion that a party's waiver

of the right to proceed before an Article III tribunal must be knowing and voluntary.

*Rivera*, 216 F.R.D. at 661 n. 32.  "Thus, a party's consent ought to be deemed to

extend to the full panoply of proceedings and circumstances that a party could and

should know might arise during the course of ordinary litigation.  On the other

hand, a party should be allowed to withdraw consent if proceedings or

circumstances arise that the party neither could nor should have conceivably

foreseen at the time the party executed the waiver (i.e., extraordinary

circumstances." *Id.*

Lewis has made three major arguments in favor of vacating the reference. Applying the above cited "extraordinary circumstances" standard, the Court will address and reject each of them in turn.

**B.      *The Magistrate Judge Retains Jurisdiction Over*** <u>***This Consent Case On Remand from the Eleventh Circuit***</u>

Lewis quite unpersuasively argues that a magistrate judge does not have jurisdiction to try a case on remand without a renewed consent of the parties.  *See* [D.E. 294 at 3].  According to Lewis, the parties should be given a renewed option to either consent to trial before the magistrate judge or have their case heard by a district judge.   Naturally, Lewis cites no authority that squarely and simply holds as such, despite the fact that countless numbers of cases involving presiding magistrate judges have likely been appealed and remanded.  Not once has a court on remand, or an appellate court on appeal, held that a magistrate judge does not have jurisdiction to try a case on remand without renewed consent.   Given the express statutory language in § 636 that flies in the face of such a principle, that is not surprising.

Nevertheless, Lewis instead attempts to support his theory using a unique and distinguishable case, *Lopez v. Holder*, 563 F.3d 107 (5th Cir. 2009).  The Court readily finds that the *Lopez* holding has nothing to do with this case.  In *Lopez*, four individuals who were subjected to removal proceedings by the former Immigration and Naturalization Service filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Southern District of Texas, claiming that they were United States citizens by virtue of having been born in the

United States.  *Id.* at 109.  The parties consented to proceed before a magistrate judge.  The magistrate concluded that the district court did not have jurisdiction over claims of citizenship, which are required to be made in the court of appeals. While the appeal was pending, Congress enacted the REAL ID Act, which eliminated federal habeas jurisdiction over removal proceedings, providing that a petition for review filed in a court of appeals is the sole means for judicial review of removal orders.  *Id.* (citing *Hernandez-Castillo v. Moore*, 436 F.3d 516, 518 (5th Cir. 2006)).  The parties filed a joint motion to convert the pending appeal into a petition for review.  They also requested that the converted petition for review be transferred to the district court for a new hearing on the claim of nationality pursuant to 8 U.S.C. § 1252(b)(5)(B).  The Fifth Circuit granted the motion, transferring the matter to the same district court where the original habeas petition was filed for a *de novo* hearing on the citizenship claims.  *Id.*

On remand, the petitioners then moved to withdraw consent to proceed before the magistrate judge.  The magistrate judge denied the motion.  On appeal from that motion, the petitioners argued that the consent to the habeas case did not constitute consent to the transferred case.  Furthermore "the habeas nature of the appeal was lost with the REAL ID Act, when [the petition for a writ of habeas corpus] was converted to a petition for review and assigned a new number by this court."  *Id.* at 111.

The Fifth Circuit agreed with the petitioners and held that "the transferred proceeding was not a continuation of the habeas proceeding but was a new proceeding given that it flowed from a petition for review, mandated by the REAL

ID Act, and a § 1252(b)(5) transfer." *Id.* As the petitioners pointed out, the transfer under § 1252(b)(5) "could have been to a district court different from the one that heard their habeas case, as § 1252(b)(5)(B) mandates that the *de novo* hearing be conducted by a court for the district where the petitioners reside." *Id.* The petitioners in *Lopez* happened to reside in the Southern District of Texas, where the habeas petition originated, but, for the sake of argument, if they had resided in the Northern District of Texas, or in the Eastern District of Louisiana, or in any of the other districts within the Fifth Circuit, their case would have been *required* to be transferred to that district's court. Because the authority of a magistrate under 28 U.S.C. § 636 extends only to "the district court or courts he serves," consent to proceed before a magistrate judge in one district would not necessarily be valid in another district. *Id.* Thus, the reference to the magistrate judge was properly vacated.

This sojourn through the procedural history of the *Lopez* case demonstrates that it is easily distinguishable from ours. The sanctions proceedings mandated by the Eleventh Circuit to be conducted in this Court can in no way be considered separate proceedings. There is no conversion of this case from one type to another or assignment of a new case number as there was in *Lopez*. Moreover, attorneys admitted to practice in federal court, including all attorneys in this case, are surely (or should be) aware that when presenting a pleading, written motion, or other paper to the court, those filings are to meet the requirements of Rule 11, as "[e]very pleading, written motion, and other paper" filed in federal court falls under the purview of Rule 11. Fed. R. Civ. P. 11(a). If any of those attorneys filed a pleading,

written motion, or other paper that violated Rule 11, that attorney or those attorneys would validly be subject to sanctions if the opposing party should so move or if the court *sua sponte* found a violation. There is no separate proceeding or case designation for Rule 11 sanctions proceedings against an attorney.

Sanctions motions of whatever stripe have always been treated as ancillary to the Court's original jurisdiction. That is why, even when subject matter jurisdiction is ultimately found to be lacking in a case, a court always retains the jurisdiction to adjudicate a sanctions motion. *See, e.g., Willy v. Coastal Corp.,* 503 U.S. 131, 138 (1992) (concluding that a district court could impose Rule 11 sanctions even where it was later determined that the court lacked subject matter jurisdiction over the underlying case because an "imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate.") (quoting *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 395-96 (1990)).

Analogously, when a magistrate judge is conferred presiding jurisdiction over an action, that jurisdiction remains for collateral issues like sanctions motions that arise post-judgment, and especially when those issues arise on remand. No new action or proceeding is involved; merely a continuation of the original proceeding over which the magistrate judge was conferred plenary jurisdiction.

Furthermore, there is no novel issue of law or newly-passed statute applying directly to Rule 11 sanctions proceedings that would require a vacation of reference to—or a withdrawal of consent from—the magistrate judge. The fact that the

newly-passed REAL ID Act happened to apply directly to the parties in *Lopez* in the midst of litigation was a mere coincidence.   There is no such coincidence here. There is also no statute mandating that this case be transferred to a different venue, as was the case in *Lopez*, with the § 1252(b)(5) transfer requiring, in theory, that the parties appear before a judge in a completely different district.   To put it plainly, nothing about *Lopez* is analogous to this case.

Lewis has cited no authority, from this Circuit or elsewhere, in support of the assertion that consent to a magistrate judge is vacated on remand from an appeal of a ruling by that magistrate judge.   We can look at just a few recent examples, however, that illustrate how the contrary is true.   In *Canon Latin America, Inc. v. Lantech (CD), S.A.*, 508 F.3d 597 (11th Cir. 2007), a case originating in this District, all parties consented to Chief Magistrate Judge Brown's jurisdiction over their case.[2]   When the Eleventh Circuit later vacated and remanded Chief Magistrate Brown's issuance of a permanent anti-suit injunction, the case was returned directly to Chief Magistrate Brown.   Subsequent to the remand, Chief Magistrate Brown presided over all other matters, including a motion by the plaintiff for "Further Relief" and a motion by the plaintiff to reopen the case.   *Canon Latin America, Inc. v. Lantech (CR), S.A.*, No. 05-20297-CIV, 2009 WL 742232, *1 (S.D. Fla. Mar. 20, 2009).   This is the rule in this Circuit, not the exception.

A court may *sua sponte* vacate a reference to a magistrate judge on a lesser "good cause" standard than the "extraordinary circumstances" standard that applies

---

[2] In fact, the consent form they signed was textually identical to the form that Peer and Lewis signed.

when a party moves to vacate reference.  *See, e.g.*, *Wharton-Thomas v. United States*, 721 F.2d 922, 927 (3d Cir. 1983).  If consent did not exist for us to rule on the motions for sanctions after the entry of judgment (which was affirmed by the Eleventh Circuit), then the Eleventh Circuit could have easily vacated the reference upon its own showing of good cause when the case was originally brought before it on appeal.  It did not vacate the reference.  Consent still exists, and our jurisdiction over this case remains.

**C.      *Consent to Magistrate Judge's Jurisdiction
         Is Not Vitiated Upon the Entry of Final Judgment***

Alternatively, Lewis argues that once a magistrate judge enters judgment in a matter, his special designation is at an end, and he then states that consent "does not extend to post judgment sanctions proceedings, but rather covers the trial and final judgment which has already occurred."  [D.E. 294 at 2-3] (citing *McCoy v. Lafaut*, 813 F. Supp. 1508, 1510-11 (D. Kan. 1992)).  Notwithstanding the fact that the issue in *McCoy* was whether a magistrate judge had jurisdiction over a newly-added party in a post-judgment garnishment proceeding, nothing in the language of § 636(c) or in any case interpreting § 636(c) that is binding upon this Court states that reference to a magistrate judge ends with an entry of final judgment.  Lewis, in essence, argues that the language in the statute that states that consent to magistrate jurisdiction allows the magistrate to "order the entry of judgment in the case" should be the controlling language in the statute.  According to Lewis, once judgment is entered, the magistrate judge's duties have been satisfied, and if there are any new motions or proceedings then the parties should be permitted to either

re-consent to magistrate jurisdiction or to withdraw consent and appear before an Article III judge.

This Court disagrees and, focusing primarily on the language of the statute, finds that the language stating that consent to magistrate jurisdiction allows the magistrate to "conduct *any or all proceedings* in a jury or a nonjury civil matter" takes precedence over any language regarding the entry of judgment.  § 636(c) (emphasis added).  Nothing about the way Congress drafted the statute lends itself to support the argument that an entry of final judgment is the be-all, end-all of a magistrate judge's jurisdiction in a consent case.  Such a finding is more in keeping with the express intent of the legislature, that "if a magistrate is designated for trials in any particular type of case, he must be designated for all types of matters." S. Report No. 96-74, at 14.  The magistrate judge was designated for trial in this case, so he is designated for all types of matters in this case.  And "any or all proceedings," as described by the statute, *necessarily includes* at least some proceedings which could take place after judgment, such as motions for sanctions.

On that note, it is worth mentioning that the motions for sanctions against Peer's former counsel were all filed and became ripe *before* the entry of judgment in this case:  Lewis' motion for sanctions against Roderman and Greenbaum ripened on November 9, 2006, with the filing of Lewis' Reply to Roderman, and on November 15, 2006, with the filing of Lewis' Reply to Greenbaum; and Lewis' motion for sanctions against Rosenbaum ripened on October 23, 2007, with the filing of Lewis' Reply.  The Court entered judgment in Lewis' favor on October 25, 2007.  It is thus entirely plausible that this Court could have ruled on the motions

for sanctions before judgment was entered.  If the Court had so ruled at that time, Lewis would have had absolutely no ground to stand on in arguing this Motion.  So why should this Court then find, once judgment has been entered, that the magistrate judge can no longer preside over motions that he had complete jurisdiction to preside over when they were originally filed?  The simple fact that a proceeding takes place *after* judgment does not *per se* make it a "post-judgment proceeding."

In short, a court making a determination on motions for sanctions is not a proceeding in the same vein as a post-judgment garnishment proceeding involving the entry of a brand new party to the litigation, regardless of what Lewis attempts to claim.  To vacate a reference to a magistrate judge on the ground that final judgment has already been entered "would unfairly permit a party to shop for an accommodating judge."  *Frank v. County of Hudson*, 962 F. Supp. 41, 44 (D.N.J. 1997).  This statement seems especially apropos in this case, in which the party moving for vacation of reference is the only party that has been part of this litigation from the moment consent was stipulated to and, thus, is the only party whose consent cannot in any way be questioned.  We had had jurisdiction over the motions for sanctions when they were filed and we retain jurisdiction over them now.

### D.    ***All Parties Have Consented to Magistrate Judge Jurisdiction***

Finally, Lewis' argues in favor of vacating the reference by claiming that not all of the parties have consented to magistrate jurisdiction:  "none of Peer's former counsel and/or law firms have consented to magistrate jurisdiction, and without

their express consent, there is no magistrate jurisdiction in the continuation of this case." [D.E. 294 at 4]. It is true that problems regarding consent can potentially arise when additional parties are added to litigation after the original parties have consented. If consents are not obtained, "these added parties, like any others who have not consented, retain the option of nullifying any resulting judgment on the ground that they have never consented." Wright & Miller, § 3071.2. The only late-arriving party that had not consented at the time the Motion to Vacate Reference was filed was Rosenbaum, as he had withdrawn as Peer's counsel before the Notice of Right to Consent was signed. [D.E. 112]. Rosenbaum has since expressly consented to magistrate judge jurisdiction. [D.E. 296].

Lewis also claims that Roderman, Greenbaum, and Zardus have not consented to magistrate judge jurisdiction because, when they signed the Notice of Consent, they signed on Peer's behalf and not on their own. Again, the Court reminds Lewis that competent attorneys litigating in federal court are well aware of the parameters of Rule 11 and how those parameters apply to all filings. They are also aware that if Rule 11 is violated after the right to be heard before an Article III judge is waived, then the magistrate to whom consent was given will be the judge presiding over any applicable sanction proceedings. If Roderman, Greenbaum, and Zardus did not want to be brought before the magistrate judge in a sanctions proceeding should they violate Rule 11, then they likely would (or at least should) have counseled Peer that consenting to magistrate jurisdiction may not be in their collective interest.

Lewis then claims that § 636(c) "requires a clear and unambiguous statement in the record of the affected parties' consent to the magistrate judge's jurisdiction," and "cannot be inferred from the conduct of the parties."  [D.E. 294 at 4] (quoting *Reiter v. Honeywell, Inc.*, 104 F.3d 1071, 1073 (8th Cir. 1997) (citations omitted); *Hall v. Sharpe*, 812 F.2d 644, 647 (11th Cir. 1987) (citations omitted)).  According to Lewis, because Zardus, Greenbaum, and Roderman did not expressly consent to magistrate judge jurisdiction on their own behalf, then there is no consent.

This assertion also fails.  Indeed ir runs contrary to current Supreme Court precedent.  "The question is whether consent can be inferred from a party's conduct during litigation, and we hold that it can be."  *Roell*, 538 U.S. at 582.  The Court refused to adopt a bright-line rule requiring express consent, instead accepting implied consent "where . . . the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the magistrate judge."  *Chambless v. Louisiana-Pacific Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007) (quoting *Roell*, 538 U.S. at 589-90).

By counseling their client to consent to magistrate jurisdiction, and then by actively participating in the litigation for over a year (Greenbaum) or for nearly five years (Zardus and Roderman), those attorneys have at the very least impliedly consented to magistrate judge jurisdiction on their own behalf for the purposes of a Rule 11 sanction arising from a paper filed with this Court on behalf of their client. *See Chambless*, 481 F.3d at 1351 ("Eight months of continual participating in pretrial proceedings justifies the inference of consent from a litigant aware of the need to consent.")  Roderman, Greenbaum, and Zardus are not "new parties," as

Lewis maintains.  He has cited no authority or factually analogous case stating that a party's counsel responsible for the filing that led to a Rule 11 motion is to be considered a new party for the purposes of consent under § 636(c).  No more attention need be paid to Lewis' claim than that.

The rules that apply to latecomers and intervenors that Lewis points to in cases like *Kalan v. City of St. Francis*, 274 F.3d 1150, 1153 (7th Cir. 2001); *Mark I, Inc. v. Gruber*, 32 F.3d 369, 370 (7th Cir. 1994); and *J.C. Henry v. Tri-Services, Inc.*, 33 F.3d 931, 933 (8th Cir. 1994), are wholly inapplicable to Roderman, Greenbaum, and Zardus, as they are neither latecomers nor intervenors in this case.  The only arguable latecomer, as stated above, is Rosenbaum, who has expressly consented to magistrate judge jurisdiction.  Hence, this too derails Lewis' argument now that all parties did not consent to magistrate judge jurisdiction.

### III.  CONCLUSION

Although this Motion was designated as a motion to vacate reference, it likely should properly have been designated as a motion to withdraw consent, as Lewis is, in essence, attempting to withdraw his validly given consent to magistrate judge jurisdiction.  His "Notice of Non-Consent," [D.E. 293] was not so much "notice" as it was a mere pre-cursor to the filing of this motion to vacate reference.  Regardless, there is no absolute right to withdraw consent to jurisdiction before a magistrate once consent is given.  *United States v. Neville*, 985 F.2d 992, 1000 (9th Cir.), *cert. denied*, 508 U.S. 943 (1993) (citing *Carter v. Sea Land Servs., Inc.*, 816 F.3d 1018, 1021 (5th Cir. 1987)).  Lewis cannot withdraw his consent now, nor can he vacate magistrate judge reference based on the meritless claims discussed above.

The court stated in *Rivera* that "a party should be allowed to withdraw consent if proceedings or circumstances arise that the party neither could nor should have conceivably foreseen at the time the party executed the waiver (i.e., extraordinary circumstances)." *Rivera*, 216 F.R.D. at 661 n. 32.  There is nothing about a motion for Rule 11 sanctions that could not nor should not have been contemplated by the parties.  There is, therefore, nothing in this case that rises to the level of "extraordinary circumstances" required to vacate the reference.  There are no "extraordinary questions of law at issue" with a potential for "wide precedential importance" that would warrant a vacation of reference to the magistrate.  S. Report No. 96-74 at 14.  Even the lesser "good cause" standard would not be satisfied here.  As a result, and given the fact that the only latecoming party with a due process right to be heard before an Article III judge has expressly consented to magistrate jurisdiction, it is hereby **ORDERED AND ADJUDGED** that Defendant/Counter-Plaintiff's Motion for Vacation of Reference to Magistrate is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 2nd day of August,  2011.

EDWIN G. TORRES
United States Magistrate Judge