## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 06-60146-Civ-TORRES

CHRISTOPHER JAMES PEER,

      Plaintiff/Counter-defendant,

v.

DANIEL WARFIELD LEWIS,

      Defendant/Counter-plaintiff.

_____/

## <u>ORDER</u>

On remand from the Eleventh Circuit Court of Appeals, this matter is back before the Court on Defendant Daniel W. Lewis ("Lewis")'s motion for sanctions against Christopher James Peer ("Peer")'s attorneys Richard L. Rosenbaum ("Rosenbaum"), Barry G. Roderman ("Roderman") and Scott M. Greenbaum ("Greenbaum"). The Eleventh Circuit's mandate included two clear directives: 1) Rosenbaum acted in bad faith; therefore, this Court must determine whether his bad faith warrants the imposition of sanctions and, if so, then exercise its inherent authority to impose an appropriate sanction; and, 2) analyze whether the conduct of Roderman and Greenbaum is sanctionable under Fed. R. Civ. P. 11.

On March 20, 2012, the Court held an evidentiary hearing on the issue of Rosenbaum's sanctions, during which the parties presented their arguments. The Court rests its decision on a complete review of the record, the Eleventh Circuit's mandate and the supplemental findings made during the March 20, 2012 evidentiary hearing.

## I.  BACKGROUND

A long time ago, Lewis sought sanctions against Peer's attorneys – Rosenbaum, Roderman and Greenbaum – pursuant to Rule 11,  28 U.S.C. § 1927 and the Court's inherent power to sanction. [D.E. 151, 118].  The Court denied those motions finding that sanctions were unwarranted because Peer's "counsel had some good faith basis to believe that [Peer's] claim was not objectively frivolous" and because "[t]he Court [was] unable to find evidence that any of Peer's lawyers knowingly and recklessly pursued a frivolous claim that alone multiplied the proceedings." [D.E. 259 at 5, 8].  Moreover, the Court concluded that: 1) Lewis's Motion for Rule 11 sanctions as to Rosenbaum was untimely; and, 2) there was no evidence to establish dilatory tactics that would warrant sanctions pursuant to 28 U.S.C. § 1927.

The Eleventh Circuit, while affirming as to those latter points, reversed on the former and found that Peer's claim was "objectively frivolous"; that Rosenbaum had ample facts to reach that conclusion *before* he filed the federal lawsuit; and that there was no good faith basis to proceed with the federal Fair Credit Reporting Act ("FCRA") lawsuit. *See Peer v. Lewis*, 606 F.3d 1306, 1312-14 (11th Cir. 2010).  In other words, Rosenbaum knowingly acted in "bad faith" and sanctions were appropriate. *Id.* at 1316. However, because *Peer* acknowledged that Rule 11 and 28 U.S.C. § 1927 sanctions were procedurally and substantively barred, respectively, *Peer* invoked the district court's inherent power to sanction. *Id.* at 1314.

2

In effect, *Peer* concluded that Rosenbaum's bad faith was inexcusable and that he should not be permitted to avoid the consequences of his actions on a procedural technicality.  Rather, armed with the district court's inherent power to sanction, *Peer* specifically remanded this matter for further proceedings.  Although somewhat equivocal, *compare id.* at 1315 ("district court abused its discretion by denying Lewis's motion for sanctions under the court's inherent power") *with id.* at 1316 ("[on] remand[,] ... district court to determine whether to impose sanctions"), we nevertheless read *Peer* as directing the imposition of a sanction and thus turn to what sanction is most appropriate.

## II.   RELEVANT FACTUAL FINDINGS

### A.   *Initial Matters*

As a starting point, we expressly adopt (as we must) the Eleventh Circuit's conclusion that Rosenbaum acted in bad faith based on its specific factual findings that:

> (1) on February 1, 2006, Lewis' counsel told Rosenbaum that ¶19 in the state court complaint was inaccurate because Peer's address was obtained from a Westlaw People Finder report, and not Peer's credit report; (2) on February 1, 2006, Lewis amended his state court complaint to delete ¶19's reference to any credit report and served Peer with this amended complaint; (3) on February 2, 2006, Peer obtained a copy of his credit report and faxed this report to Rosenbaum; (4) Peer's credit report showed that Lewis never accessed it; and (5) Peer, the client, testified that on February 1 or February 2, 2006, he met with Rosenbaum to discuss Lewis' amended state court complaint and whether to bring an FCRA claim in federal court. Peer's claim against Lewis was filed by Rosenbaum on February 3, 2006.

3

*Peer*, 606 F.3d at 1312.

Next, because it is relevant to this inquiry, we turn to the work that Rosenbaum actually undertook to litigate this matter, which was very little.  On February 3, 2006, Rosenbaum filed Peer's three page complaint alleging a single FCRA violation. [D.E. 1].  *Pro se* litigant Lewis timely answered, denied the allegations, asserted his affirmative defenses and filed a counterclaim for abuse of process, which totaled nine pages. [D.E. 6].  Rosenbaum answered Lewis's counterclaim and replied to Lewis's affirmative defenses, which took four pages. [D.E. 8, 9].  Rosenbaum then filed Peer's two page initial disclosures on April 18, 2006 [D.E. 12] and served his only discovery request (a two-page, nine-question requests for admission) on May 22, 2006. [D.E. 151-5].[1]  Rosenbaum next filed a two-page motion to withdraw as counsel on June 19, 2006 [D.E. 15], which the Court granted on June 22, 2006. [D.E. 18].  Prior to that order, Lewis's counsel made her appearance and filed her only filing during Rosenbaum's tenure – a four-page response to his motion to withdraw. [D.E. 17].

In total, and excluding exhibits, Rosenbaum contributed *thirteen (13) pages* to the record, which resulted in *thirteen (13) pages* of responses by Lewis, prior to Rosenbaum's withdrawal.  As that limited activity demonstrates, neither *pro se* litigant Lewis nor his counsel filed a motion to dismiss, sent a Rule 11(c)(1) letter, or filed a sanctions motion while Rosenbaum was the attorney of record.  In fact, as the record

---

[1]     As characterized by Lewis's counsel, "Rosenbaum's only discovery pursuit was a mere 9 Requests for Admissions." [D.E. 151 at 3].

makes clear, Lewis first placed *Rosenbaum* on notice of any Rule 11-type sanction on

July 9, 2007 – more than one year *after* he withdrew.[2]

### B.    *March 20, 2012 Evidentiary Hearing*

We granted Lewis's motion for an evidentiary hearing to determine "whether

monetary or other sanction should be entered, with the finding of bad faith in the

record as found by the Court of Appeals." [D.E. 302 at 1]. That being said, we clarified

that "[t]o the extent that Mr. Rosenbaum seeks such a hearing to undermine the Court

of Appeals' decision, even if warranted, the Court of Appeals' mandate precludes such

reconsideration." *Id*. at 2.  As a consequence, the hearing was expressly limited to

determining an appropriate sanction.

During the hearing, Rosenbaum, Judith Stern ("Stern") and Lewis testified.  We

find that the testimony of Rosenbaum and Lewis, while biased as expected, was

credible.  On the other hand, we find Stern's testimony to be wholly incredible; her

responses were evasive, largely contradictory to the record and entirely self-serving.

Thus, we discredit the majority of her testimony and conclude that it served only to

undercut Rosenbaum's argument in all respects.

Because the purpose of the March 20 hearing was merely to assist the Court

with determining what sanction is most appropriate, we see no compelling reason to

---

[2]      On July 19, 2006, for instance, Lewis filed a motion for sanctions for
discovery violations pursuant to Fed. R. Civ. P. 37. [D.E. 21].  However, based on that
filing, it is clear that Lewis did not expressly raise an issue as to the frivolity of Peer's
complaint. *See also* [D.E. 43 - motion for discovery sanctions only; D.E. 46 - Rule 11
motion for sanctions against Peer *only*; D.E. 50 - motion for discovery sanctions against
Peer and Greenbaum].

summarize the entire hearing or make any new or specific findings of fact because the truly relevant findings (*i.e.*, bad faith, objectively frivolous) were already made by *Peer*. Instead, we note certain relevant findings that specifically weighed on our decision-making process with respect to fashioning an appropriate sanction.

First, it is undisputed and clear in the record that the filing of this federal lawsuit was motivated by political reasons. Stern's testimony, in spite of its tortured form, all but confirmed this; as did Rosenbaum's own admissions. That being said, we would be remiss if we did not also acknowledge that the underlying state lawsuit, whether nefarious or not, also had its genesis in the political realm. Second, Rosenbaum was never paid for serves rendered in the federal lawsuit. Third, Rosenbaum was counsel of record for less than five months. Fourth, Lewis's attorney entered a notice of appearance eight (8) days before Rosenbaum was terminated as counsel of record. Fifth, Rosenbaum never conducted a thorough investigation and, more specifically, he never sought to confirm the merits of this lawsuit by contacting TransUnion.[3] Finally, notwithstanding the objective evidence, Rosenbaum *subjectively* thought the lawsuit had merit and, as he stated, "maybe I held onto paragraph 19 too long."[4] [March 20, 2012 Transcript at 82:21–83:5].

---

[3]    TransUnion is the credit agency that Lewis allegedly used to obtain Peer's personal information.

[4]    As a reminder, "paragraph 19" from Lewis's state court complaint stated that Peer's address was obtained from Peer's credit report. But Lewis quickly amended that allegation to remove any reference to Peer's "credit report." Nevertheless, Rosenbaum, believing the original allegation was too significant to ignore, continued to rely on it notwithstanding the factual revelations to the contrary.

###### A.    *Rosenbaum's Position*

During the hearing, Rosenbaum (through counsel) conceded that he should have conducted additional due diligence before filing the federal FCRA claim.   And Rosenbaum stated that had he done so, he could have prevented the subsequent damage that arose from filing the federal lawsuit.   Notwithstanding this concession, Rosenbaum now argues that the facts with which he relied upon to file this lawsuit[5] (some of which he contends were not presented or were presented ineffectively to the Eleventh Circuit)[6] were of such quality that, when balanced with the sanctions already befallen him, *i.e.*, the Eleventh Circuit's public reprimand, successfully defending a Florida Bar complaint, and defending himself in these sanctions proceedings, that an additional or monetary sanction is unwarranted.

###### B.    *Lewis's Position*

On the other end of the spectrum, Lewis maintains that because Rosenbaum knew, or should have known, that there was no good faith basis to file the federal

---

[5]    Specifically, that Lewis amended paragraph 19 of his state court complaint to remove reference to Peer's credit report; that on February 2, 2006, the day before Rosenbaum filed the federal lawsuit, a newspaper article attributed a statement to Lewis that explicitly corroborated Peer's believe that Lewis had used Peer's credit report to obtain his North Carolina address; and that Stern sent an email on February 2, 2006 that supported Rosenbaum's belief that Lewis, through a third-party, obtained a copy of Peer's credit report.

[6]    This parenthetical point, regardless of how strongly Rosenbaum believes it has merit, is pointless for our purposes.  *See United States v. Tamayo*, 80 F.3d 1514, 1520 (11th Cir. 1996) (under the mandate rule, a district court acting on remand cannot vary or examine the mandate "for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded.").

lawsuit, any costs incurred by Lewis as a result of having to defend the frivolous law suit are a direct consequence of Rosenbaum's bad faith.  Therefore, Lewis seeks a sanction order that finds Rosenbaum jointly and severally liable for the entire judgment against Peer in the underlying trial, to wit: $125,000.  In addition, or as an alternative, Lewis seeks any and all fees related to this appeal and the subsequent March 20 evidentiary hearing. [Tr. at 161:25 –164:10].

### III.   ANALYSIS

#### A.   _Court's Inherent Sanction Power – Rosenbaum_

A district court may invoke its inherent power to sanction upon a finding of bad faith, which _Peer_ has established in this case. _Chambers v. NASCO, Inc._, 501 U.S. 32, 50 (1991); _Peer_, 606 F.3d at 1314.  The inherent power is to be used to fashion an "appropriate sanction." _Chambers_, 501 U.S. at 44; _see also Martin v. Automobili Lamborghini Exclusive, Inc._, 307 F.3d 1332, 1335 (11th Cir. 2002) (noting that a court's inherent authority "includes the authority to impose 'reasonable and appropriate' sanctions") (citing _Malautea v. Suzuki Motor Co., Ltd._, 987 F.2d 1536, 1545 (11th Cir. 1993)).  But, as the Supreme Court warned, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." _Id._

_Peer_ concluded that Rule 11 sanctions were substantively appropriate because Rosenbaum knowingly filed an "objectively frivolous" claim.  But, it also acknowledged that such relief was procedurally time-barred and, therefore, affirmed the denial of Rule 11 sanctions. _Peer_, 606 F.3d at 1313.  Nevertheless, as a practical matter, because

8

*Peer* also concluded that Rosenbaum's bad faith "unlock[ed the] court's inherent power" to sanction, we shall exercise the Court's discretion and impose Rule 11-type sanctions *through* the Court's inherent power. *See Peer*, 606 F.3d at 1312-1313, 1315 n.9 (noting that this Court could have imposed Rule 11 sanctions *sua sponte,* notwithstanding Lewis's failure to do so in a timely fashion, and that act would have avoided the Rule 11 timing issue altogether); *Chambers*, 501 U.S. at 44-45 (the Supreme Court noted that "[a] primary aspect of that discretion [under the inherent powers to sanction] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.").

With that point made, we turn to Rosenbaum's threshold argument that the non-monetary sanctions discussed above are sufficient. On this record, however, and notwithstanding the imposition of those sanctions, we decline to adopt Rosenbaum's proposal for several reasons. First, Rosenbaum's argument (presented at the March 20 evidentiary hearing) relied on evidence or arguments that were presented to and rejected by the Eleventh Circuit. Obviously, not having found them compelling, *Peer* specifically remanded this matter for further proceedings to determine the issue of sanctions. Had *Peer* concluded that the non-monetary sanctions were sufficient, it could have issued a public reprimand and resolved the matter entirely. Having implicitly rejected that argument, we too find Rosenbaum's argument unavailing on that point. *See, e.g., Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1354 n.28 (11th Cir. 2011) ("the district court was perfectly capable of preventing Molinos

from arguing new theories raised for the first time at trial; the court's failure to rule on this issue speaks volumes"); *Stano v. Butterworth*, 51 F.3d 942, 948 (11th Cir. 1995) ("[T]he district court's order implicitly rejected these two arguments when it found that Stano's 'arguments are without merit' and that his allegations 'demonstrate no facts which would undermine the previous findings of the Court.'"); *Foster v. Astrue*, 08-0367-KD-M, 2009 WL 455447, at *2 (S.D. Ala. Feb. 19, 2009) ("The Court notes that although the ALJ did not specifically enter a 'ruling' to the 'objection,' the ALJ summarized [the]... opinion, rejected it, and explained why he rejected it.  This is an implicit ruling on Plaintiff's objection.").

Second, Rosenbaum interjected (or at least attempted to interject) new evidence and testimony to otherwise establish an objective good-faith basis to file the lawsuit – *i.e.*, the February 2, 2006 article and related emails.  Rosenbaum offered this argument *not* to rebut the Eleventh Circuits finding *per se*, but as persuasive evidence to support a finding that the non-monetary sanctions were sufficient.  However, and putting aside the fact that this "new" evidence is inexcusably untimely, because *Peer* explicitly rejected that notion and found "bad faith," we decline to give any material weight to that evidence.

Finally, and in relation to the previous point, Rosenbaum offered his own testimony to support the argument that his conduct was such that additional, monetary sanctions are unwarranted.  Upon review of his testimony, however, we find his argument unavailing.  And, to make this point, we highlight that portion of Rosenbaum's testimony in which he acknowledged that "maybe I held onto paragraph

10

19 too long." [Tr. at 82:21–83:5].  That admission is significant because it demonstrates that Rosenbaum held a *subjective* belief that he gave greater weight to than the contrary *objective* evidence available at the time.  But again, because *Peer* clearly found Rosenbaum's subjective belief was unreasonable and amounted to bad faith, we likewise must dismiss that argument as unpersuasive.  Moreover, Rosenbaum's subjective belief in any event is insufficient as a matter of law to support his argument.  *See Pelletier v. Zweifel*, 921 F.2d 1465, 1514 n.88 (11th Cir. 1991) ("If the attorney/party did not make a 'reasonable inquiry,' then the court must impose sanctions – despite the attorney/party's good faith *belief* that the claims were sound.") (emphasis added).  Ultimately, Rosenbaum's threshold argument fails to convince us that the non-monetary sanctions incurred to date are sufficient.

Therefore, based on consideration of the record as a whole and the Eleventh Circuit's holding, we must impose a monetary sanction against Rosenbaum.  *Donaldson*, 819 F.2d 1551, 1557 (11th Cir. 1987) ("The imposition of a monetary sanction is a particularly reasonable use of a court's discretion under Rule 11. ... Imposing a financial penalty often will be the most effective and fair means of enforcing Rule 11 and deterring baseless lawsuits. ... Monetary sanctions may be the most effective way to deter a powerful and wealthy party from bringing frivolous or vexatious litigation.") (*en banc*); *Mortensen v. Bank of America, N.A.*, No. 3:10-CV-13(CDL), 2012 WL 1424502, at *2 (M.D. Ga. Apr. 24, 2012) ("The goal of Rule 11 sanctions in the context of a frivolous complaint is to deter the filing of frivolous claims

while not chilling the attorney's legitimate 'enthusiasm or creativity in pursuing factual or legal theories.'") (quoting *McGinnis v. Ingram Equip. Co*, 918 F.2d 1491, 1496 (11th Cir. 1990)).

That being said, we are also mindful that "[t]he injured party has a duty to mitigate costs by not overstaffing, overresearching or overdiscovering clearly meritless claims." *Sussman v. Salem, Saxon and Nielsen, P.A.*, 150 F.R.D. 209, 215 (M.D. Fla. 1993). "A party defending against a frivolous paper has a duty under Rule 11 to mitigate its legal fees and expenses by resolving frivolous issues quickly and efficiently." *In re Gen. Plastics Corp.*, 184 B.R. 1008, 1016 (Bankr. S.D. Fla. 1995) (quoting *Dubisky v. Owens*, 849 F.2d 1034, 1037 (7th Cir. 1988)); *see also Donaldson*, 819 F.2d at 1560 ("An attorney ... should be given early notice that his ... conduct may warrant ... sanctions [because] [e]arly notice can deter continuing violations, thereby saving monetary and judicial resources."); *cf. Cooter & Gell v. Hartmarx Corp.* 496 U.S. 384, 412 (1990) ("In those rare cases in which the defendant properly incurs great costs in preparing a motion to dismiss a frivolous complaint, he can lock in the right to file a Rule 11 motion by answering the complaint and making his motion to dismiss in the form of a Rule 12(c) motion for judgment on the pleadings.").

To that end, we note that Lewis, for his part, chose to initially proceed *pro se*. On his own, Lewis filed a pleading that included his answer, eleven affirmative

defenses[7] and a counterclaim for abuse of process. [D.E. 6].  Notably, Lewis did not invoke the protections provided under Rule 11 nor is there any evidence in the record to suggest that he considered such an avenue at the outset (whether formally or informally).

Additionally, because Rule 11 sanctions must relate to the violation, the fee and cost award must likewise be limited to those *caused* by the associated conduct.  *Cooter & Gell*, 496 U.S. at 406-407 (sanction must be limited to costs and fees incurred because of the sanctionable paper); *see also Divane v. Krull Electric Co.*, 200 F.3d 1020, 1030 (7th Cir. 1999) (attorney's fees may be imposed as a sanction, but they must be limited to those incurred as a *direct result* of the Rule 11 violation); *Jones v. International Riding Helmets, Ltd.*, 145 F.R.D. 120,125 (N.D. Ga. 1992) (imposing a sanction for the attorney's fees and costs that were incurred as a *direct result* of the non-movant's objectively frivolous complaint); *see also* Fed. R. Civ. P. 11(c)(4) (An

---

[7]    Interestingly enough, some of Lewis's affirmative defenses were, like Rosenbaum's complaint, frivolous, as well as conclusory, repetitive or without merit. *See In re Rawson Food Service, Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) ("A defense which points out a defect in plaintiff's prima facie case is not an affirmative defense."). As a result, Lewis's two "general" defenses and his first, fourth, seventh, eighth and tenth affirmative defense were improper as they failed to present true affirmative defenses *See, e.g., Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-61490-Civ, 2010 WL 5393265, at *2 (S.D. Fla. Dec. 21, 2010) (striking the defendant's "fails to state a cause of action" defense because it is not a true affirmative defense); *Centennial Bank v. Noah Group, LLC*, 755 F. Supp. 2d 1256, 1259-1260 (S.D. Fla. 2010) (failure to attach documents is not an affirmative defense); *Grovenor House, LLC v. E.I. Du Pont De Nemours and Co.*, No. 09-21698-CIV, 2010 WL 3212066, at *5 (S.D. Fla. Aug 12, 2010) (assertion that plaintiff "failed to perform all conditions precedent to the institution of this action ... does not state enough facts to present a defense that is plausible on its face").  Arguably, only Lewis's second, third and ninth affirmative defenses were valid (his answer did not actually include a "fifth" numbered defense).

appropriate sanction may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.").

Therefore, we focus on the direct effect of Rosenbaum's frivolous filings. As noted above, and acknowledged by Lewis, Rosenbaum's filings were limited to the complaint, answer to Lewis's counterclaim, reply to Lewis's affirmative defenses, the initial disclosures, a requests for admission and Rosenbaum's motion to withdraw. Put differently, the totality of Rosenbaum's filings and Lewis's responses thereto was twenty-six (26) pages. As a consequence, the objective effect (read: Lewis's attorney's fees and costs) arising from Rosenbaum's frivolous complaint was minor. This "minor" effect conclusion is buttressed by the fact that Greenbaum and Roderman subsequently entered the case, reaffirmed Rosenbaum's pleadings as having a good faith basis (although incorrect) and thus cutoff Rosenbaum's Rule 11 liability. *See Turner v. Sungard Business Systems, Inc.*, 91 F.3d 1418 (11th Cir. 1996) (discussed below). Indeed, to put the timing issue in perspective, Rosenbaum was terminated as counsel of record by docket entry 18 on June 22, 2006; this Order is docket entry 321 entered on April 3, 2013.

With those factors in mind, we conclude that Rosenbaum shall be sanctioned for any attorney's fees, costs or expenses that arose from his conduct *prior* to his withdrawal on June 22, 2006. This sanction is appropriate because Lewis needlessly incurred costs and fees associated with filing an answer, filing the counterclaim, and responding to Rosenbaum's motion to withdraw. This award of attorney's fees and

14

costs is also warranted to effectively deter Rosenbaum and anyone else from filing bad faith pleadings in the future. *See* Fed. R. Civ. P. 11(c)(4) (An appropriate sanction may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."); *Jones*, 145 F.R.D. at 125 (imposing a sanction for the attorney's fees and costs that were incurred as a direct result of the non-movant's objectively frivolous complaint).

We decline, however, to award Lewis attorney's fees and costs beyond June 22, 2006, as well as his request for expenses relating to the July 9, 2007 sanctions motion, the appeal relating to same, or the evidentiary hearing on remand. Indeed, to a certain degree, many of those costs were not directly caused by Rosenbaum as he was no longer responsible for any additional filings in this matter. Instead, those subsequent filings, and thus any sanction relating to them, fall unto Rosenbaum's successors-in-frivolity: Roderman and Greenbaum. *See Turner*, 91 F.3d at 1421 (11th Cir. 1996). *Turner*, although not entirely on point, wrestled with the application of sanctions in a multi-attorney situation and, relevant here, that the substitute attorney, not the original attorney, was appropriately sanctioned because:

> from the moment [substitute counsel] appeared on plaintiff's behalf, he ... had actual knowledge that there was no merit to the plaintiff's assertions, or, at the very least, he consciously decided not to inquire on the merits. ... By appearing in this case, [substitute counsel] affirmed to the court that the case had arguable merit. In this sense, it was as if [substitute counsel] had refiled the complaint. To use Rule 11's words, he was 'later advocating' that the 'factual contentions [in the complaint] have evidentiary support.'

15

*Id.*; *see also Donaldson*, 819 F.2d at 1556 (relying on the Advisory Committee Notes, the court found that the new "language [of Rule 11] 'stresses the need for some prefiling inquiry into both the facts and law to satisfy the affirmative duty imposed by th[at] rule.'").  Moreover, to reach a broader conclusion and then sanction Rosenbaum for the actions taken by his replacements would, on one hand, unduly prejudice Rosenbaum for events out of his direct control while, on the other hand, effectively excusing his replacements of the consequences arising from *their* conduct.  Either way, such a result is directly at odds with the driving force of Rule 11 – deterrence.  *See Baker v. Alderman*, 158 F.3d 516, 528 (11th Cir. 1998) ("deterrence remains the touchstone of the Rule 11 inquiry.").

Similarly, we decline to impose sanctions against Rosenbaum for the costs arising from Lewis's Rule 11 motion because, as noted in *Peer*, it was untimely. Moreover, Lewis may be able to recover those costs against Greenbaum and Roderman because the motion was timely filed as to them.  We also decline to award Lewis sanctions for the costs and attorney's fees arising from the appeal is this matter because they are not the "direct" result of Rosenbaum's objectively frivolous lawsuit. Rather, the appeal arises from this Court's determination that sanctions were inappropriate and we see no reason why Rosenbaum should be punished for the actions or failings of this Court.  *See In re Creative Desperation Inc.*, 443 F. App'x 399, 402 (11th Cir. 2011) (precluding an award of appellate attorney's fees as a sanction and noting that the "[Supreme] Court held that the costs of an appeal of a Rule 11 sanction

order is not directly caused by the underlying sanctionable conduct, but rather by the district court's sanction order.") (citing *Cooter & Gell*, 496 U.S. 384 at 407).

Having concluded that sanctions are warranted for only those expenses incurred prior to June 22, 2006, we turn to calculating that amount. But, before doing so, and because it is relevant to this inquiry, we first note the unusual circumstances of this matter prior to June 22, 2006, to wit: Lewis was acting as a *pro se* litigant. Lewis's attorney made an appearance for the first time only days before Rosenbaum withdrew and she only made one filing while Rosenbaum was counsel of record. [D.E. 14, 17]. As a consequence, we are presented with the question of whether a *pro se* litigant may recover attorney's fees pursuant to Rule 11. Eleventh Circuit precedent says no. *See Massengale v. Ray*, 267 F.3d 1298, 1302-03 (11th Cir. 2001) ("Because a party proceeding *pro se* cannot have incurred attorney's fees as an expense, a district court cannot order a violating party to pay a *pro se* litigant a reasonable attorney's fee as part of a sanction."); *Oceanside Lauderdale, Inc. v. Ocean 4660, LLC*, No. 10-60025-CIV, 2011 WL 1327379, at *3 (S.D. Fla. Mar. 8, 2011) ( same).

Nevertheless, because Lewis clearly incurred some costs associated with responding to the complaint and filing his counterclaim, and because Lewis's counsel had to spend a reasonable, albeit short, amount of time drafting the two-page response to Rosenbaum's motion to withdraw, we conclude that a monetary sanction is still warranted and available under the Court's inherent power to sanction. Based on the record developed and created by Rosenbaum prior to June 22, 2006, the amount of time

17

necessary to draft and file Lewis's response to Rosenbaum's motion withdraw, and with the entire record in mind, we conclude that a reasonable sanction for Rosenbaum's conduct is $1,000.[8]   While this number is not absolutely or explicitly attributable to a precise cost incurred by Lewis or Lewis's counsel, which precision would result in a reduced amount, we reach this number by generally employing the Court's expertise on these fee and cost related matters, combined with the record evidence of the reasonable expenses actually incurred by Lewis, his counsel, and the necessity for a material monetary fine for Rosenbaum's sanctionable conduct. *See Assoc. of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1360 n.4 (11th Cir. 2006) (noting that a district court may award attorney's fees and costs as a sanction under Rule 11); *Rhein Medical, Inc. v. Koehler*, 889 F. Supp. 1511, 1514 (M.D. Fla. 1995) (imposing a $500 fine against counsel as an appropriate Rule 11 sanction).

---

[8]    Technically, in determining the appropriate amount of attorney's fees, a court must calculate the "lodestar," which is the number of hours reasonably spent working on the case multiplied by a reasonable hourly rate. *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000).  Courts may make any adjustment to the lodestar calculation for other considerations not yet factored into the lodestar amount. *Id.*  "[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* Also, district courts may consider themselves "expert[s]" on the question and may consider [their] own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Norman*, 836 F.2d at 1299).  However, because the district court is an "expert" on these matters, and for the reasons noted in the body above, we find that an award of $1,000 is sufficient.

By reaching this result, we are satisfied that, based on this particular and unique record, this sanction is sufficient to deter Rosenbaum and similar attorneys from pursuing frivolous or bad faith litigation in the future. *See Baker*, 158 F.3d at 528 (reminding litigants that, "deterrence [and not monetary sanctions] remains the touchstone of the Rule 11 inquiry."). Indeed, we trust that this experience and the resulting sanction award will be sufficient to deter Rosenbaum, a well-respected criminal defense attorney in the community, from branching out into areas over which he lacks experience and expertise. Political litigation is, like politics itself, best left for those who are expert in "the least binding form of human commitment"[9] and "the art of looking for trouble, finding it everywhere, diagnosing it incorrectly, and applying the wrong remedies."[10]

### B.   *Rule 11 Sanctions – Greenbaum and Roderman*

Greenbaum and Roderman entered appearances as Peer's counsel on July 20 and 21, 2006, respectively. [D.E. 25, 26]. On October 10, 2006, after complying with the safe-harbor provision of Rule 11(c)(2), Lewis filed his Rule 11 motion for sanctions against them [D.E. 118], which this Court denied in an omnibus order. [D.E. 259].[11]

---

[9]    *Republican Party v. White,* 536 U.S. 765, 780 (2002) (Scalia, J.).

[10]    Sir Ernest Benn, *Springfield Republican*, July 27, 1930, at 10A, *as modified by and attributed to,* Groucho Marx.

[11]    In the original order denying sanctions, the Court found that Rosenbaum's complaint was not objectively frivolous. As a consequence (and as a practical matter), the issue of Rule 11 sanctions against Greenbaum and Roderman was rendered moot and resolved without discussing the merits.

However, having found "bad faith" and noting that we left the merits of their sanctionable conduct unresolved, *Peer* remanded for further proceedings. *Peer*, 606 F.3d at 1313. With respect to the imposition of Rule 11 sanctions, *Peer* explains:

> The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts. When an attorney files a pleading in federal court, the attorney signs the pleading to certify that, among other things, (1) the pleading is not being presented for an improper purpose; (2) the legal contentions are warranted by existing law or a nonfrivolous argument to change existing law; and (3) the factual contentions have evidentiary support or will likely have evidentiary support after discovery.
>
> In assessing the propriety of Rule 11 sanctions, this Court asks: (1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous. The advisory committee notes on the amendments to Rule 11 aid the Court in interpreting and applying this rule. For example, the advisory committee note of 1993 states that Rule 11 was amended to emphasize the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable. Fed. R. Civ. P. 11 advisory committee note of 1993. The commentary specifically notes that if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention. Finally, the court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.

*Id.* at 1311-12 (quotations and citations omitted).

With respect to substitute counsel, the Eleventh Circuit has opined that "[b]y appearing in this case, [substitute counsel] affirmed to the court that the case had arguable merit. In this sense, it was as if [substitute counsel] had refiled the complaint.

To use Rule 11's words, he was 'later advocating' that the 'factual contentions [in the complaint] have evidentiary support.'" *See Turner*, 91 F.3d at 1421 (third bracket in original). Regardless, Rule 11 imposes a continuing obligation to ensure that new subsequent filings are made only in an effort to advance a meritorious matter. *See* Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or *later advocating* it – an attorney … certifies" that the paper satisfies Rule 11) (emphasis added); *see, e.g., Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 265 (7th Cir. 1999) (affirming sanction against plaintiff's counsel for filing a baseless claim, and for failing to dismiss claims against immune defendants, after learning that the claims against them were without merit). Rule 11 does not, however, police "conduct." *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002) (Rule 11 sanctions are limited to conduct concerning papers filed in court; tossing Barbie dolls off a table at a deposition is not subject to Rule 11). Sanctions based strictly on conduct fall within the purview of 28 U.S.C. § 1297 or the court's inherent power to sanction for litigating in bad faith, which are unavailable as to Roderman and Greenbaum. *See id.*; *see also* [D.E. 118].

Of particular relevance here is the finding in *Peer* that, upon Roderman's disclosure of Peer's credit report on July 25, 2006, "Lewis finally had convincing proof that Rosenbaum knowingly filed a frivolous claim." 606 F.3d at 1313. Based on that finding, we impute to both Greenbaum and Roderman that they knew, or should have known, this case was objectively frivolous at the moment they entered this case in July

of 2006. *See, e.g., Turner*, 91 F.3d at 1421.[12]  Because Greenbaum and Roderman re-affirmed and continued to advocate a case they knew or should have know was objectively frivolous, we conclude that Rule 11 sanctions are indeed warranted. *Peer*, 606 F.3d at 1311.

### 1.  Greenbaum

As a practical matter, the brunt of his involvement in this litigation dealt with defending the depositions of Peer and non-party Charles Malkus ("Malkus"), and certain distinct discovery matters.  For the most part, Greenbaum's filings were in response to discovery or sanctions motions, including: 1) a two-page response [D.E. 40] to Lewis's *18-page* July 18, 2006 sanctions motion [D.E. 21], which the Court denied [D.E. 61]; 2) a three-page response [D.E. 62] to Lewis's *20-page* August 4, 2006 sanctions motion arising from disruptive deposition conduct and terminating Malkus's deposition [D.E. 43], which the Court granted as to the improper termination only [D.E. 86]; 3) a three-page response [D.E. 76] to Lewis's *19-page* August 10, 2006 motion for sanctions again arising from Greenbaum's alleged improper deposition tactics [D.E. 50], which the Court denied [D.E. 96];[13] 4) a two-page response [D.E. 93] to Lewis's *12-page* August 22, 2006 motion to compel documents [D.E. 71], which the Court granted

---

[12]    Technically, they entered their appearance a few days before the triggering event on July 25, 2006.  However, we conclude that they must have discussed this matter Peer before agreeing to represent him and that they had, or effectively had, the credit report at the time they commenced their representation.

[13]    Lewis appealed Judge Snow's ruling, which this Court, after consent by the parties, affirmed. [D.E. 131].

[D.E. 114]; and, 5) a motion for protective on behalf of Malkus [D.E. 106], which the Court granted in part. [*Id.*].

As those filings demonstrate, Greenbaum's contribution to this matter was largely unhelpful and sanctionable, especially when evaluated from the present perspective. Up to that point, the record also shows that the sanctions were limited to the discovery violations, *i.e.*, unproduced documents and his improper deposition conduct. [D.E. 71, 86]. But thereafter, Greenbaum was largely absent from this litigation (at least based on his filings). For example, pursuant to the September 9, 2006 order, Lewis's counsel filed affidavits attesting to her fees and costs. [D.E. 99, 100]. Greenbaum failed to respond to those affidavits. On February 5, 2007, the Court entered an order imposing a monetary sanction against Greenbaum in the amount of $4,923.50. [D.E. 133]. Greenbaum failed to comply with that order. On March 20, 2007, the Court entered judgment against Greenbaum for his "failure to make timely payment or reach an agreement as to a payment plan for the fees and costs assessed against him by the Court." [D.E. 141]. Greenbaum never satisfied this judgment.

Moreover, with respect to the Court's October 17, 2006 Order [D.E. 114], Peer (with Greenbaum ostensibly as counsel) failed to comply or provide the ordered discovery. Thereafter, Lewis again moved for sanctions on November 11, 2006 [D.E. 122], which the Court granted in part by default and on the merits noting that "Plaintiff blatantly violated this Court's prior Omnibus Order." [D.E. 134]. The Court further entered an Order to Show Cause why the pleadings should not be stricken. [D.E. 134 at 3]. On March 1, 2007, Greenbaum resurfaced to file Peer's response to the

23

Show Cause Order and offered various excuses for Peer's noncompliance. [D.E. 138]. However, after another four months passed, Peer had still failed to comply with the Court's order. On June 26, 2007, the Court granted Lewis's motion for sanctions and struck Peer's complaint and answer to Lewis's counterclaim. [D.E. 148]. The Court also set a status conference for July 12, 2007 to determine whether Greenbaum should be disqualified from this matter. After failing to appear, the Court disqualified Greenbaum from this case on July 20, 2007. [D.E. 156].

As that ignominious summary illustrates, Greenbaum's conduct throughout this case was sanctionable. Particularly relevant here, he knew, or should have know, this case was objectively frivolous, but he still proceeded with the discovery process and, while doing so, he took any obstructionist stance. When Lewis gave him the opportunity to rectify these filings and actions, he failed to take advantage of it (or even withdraw as Roderman wisely decided to do). Rather, Greenbaum, whose participation tapered off after the initial discovery battles, remained in the case and contributed a sprinkling of filings that included a response to the Rule 11 motion and the March 2007 response to the Court' show cause order. Thus, obviously, Greenbaum was still attorney of record during that entire period and remained as such until the Court disqualified him. In short, the Court could within its discretion impose a sanction that amounts to all of Lewis's attorney's fees and costs incurred during Greenbaum's tenure and until his disqualification. However, certain other factors in the record counsel against such a sweeping result.

First, the Court already sanctioned Greenbaum for his discovery conduct. And, as a practical matter, much of the other discovery conduct falls outside the scope of Rule 11. *See Christian*, 286 F.3d at 1131. Second, based on the Court's review of Lewis's sanction motions, we find that they were largely excessive, overly exhaustive and unwarranted to the extent Lewis utilized them. As a consequence, it would be inappropriate to impose all of those fees onto Greenbaum. Not to mention, as noted in *Peer*, Lewis had proof that Peer's claim was baseless on July 25, 2006 and thus there was no objective basis to fight tooth and nail over unnecessary discovery. Indeed, from a discovery standpoint, this case was over on July 25, 2006 and the additional discovery requests and motion practice, while within Lewis's right to undertake, were unnecessary with respect to our calculus of a sanction award. Third, while not directly arising from this case, Greenbaum has since been disbarred from the practice of law in Florida and, thus, "deterrence," the purpose of Rule 11 has already been satisfied. *See Baker*, 158 F.3d at 528.[14] And, finally, as a practical matter, there is no evidence in the record to quantify the attorney's fees or costs that could be attributed to Greenbaum. Nevertheless, because his conduct obviously warrants sanction, we shall impose an additional sanction of $5,000, which we deem reasonable under these circumstances.

---

[14] The State of Florida disbarred Greenbaum from the practice of law. *See Florida Bar v. Scott Marshall Greenbaum*, No. SC07-861 (Fla. Dec. 13, 2007) (six month suspension effective January 16, 2008); *Florida Bar v. Scott Marshall Greenbaum*, SC09-84 (Fla. Apr. 8, 2009) (disbarment effective immediately); *Florida Bar v. Scott Marshall Greenbaum*, SC08-780 (Fla. June 4, 2009) (disbarment for five years, effective immediately).

### 2.   *Roderman*

Unlike Greenbaum, Roderman withdrew from this case the day after Lewis filed his October 10, 2006 Rule 11 motion for sanctions. [D.E. 115].[15]   Clearly, Roderman failed to take advantage of Rule 11's safe-harbor provision and, in effect, waived his right to avoid the imposition of sanctions. *See, e.g., Retail Flooring Dealers of America, Inc. v. Beaulieu of America, LLC*, 339 F.3d 1146, 1150 (9th Cir. 2003) ("The purpose of the safe harbor ... is to give the offending party the opportunity, within 21 days after service of the motion for sanctions, to withdraw the offending pleading *and thereby escape sanctions*.  A motion served after the complaint had been dismissed [does] not give [the offending party] that opportunity.") (quoting *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998) (emphasis in original)); *see also In re Miller*, 414 F. App'x 214, 216-17 (11th Cir. 2011); *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) (finding that an attorney may not escape sanctions by withdrawing from a case).  Nevertheless, the Court does credit Roderman for withdrawing from this matter and notes that regardless of Roderman's action, Greenbaum still remained, at least ostensibly, as counsel of record for Peer which questions whether Roderman had the ability to rectify this Rule 11 issue.

In any event, after the Court granted his motion to withdraw, Roderman's only other activity was responding to the motion for sanctions, which was court ordered.

---

[15]      Docket Entry 115 corresponds with the Court's Order granting Roderman's motion to withdraw.  For whatever reason, Roderman's motion to withdraw is not reflected in the record.  However, that docket entry states that Roderman filed his motion to withdraw on October 11, 2006.

[D.E. 115 at 2].   As a consequence, we conclude that Roderman's filings, while furthering an objectively frivolous case, were on balance minor and inconsequential. Moreover, it is unclear on this record that Roderman can be held accountable for Peer's failure to dismiss the case after July 2006 when both Peer and Greenbaum continued litigating in this action *after* Roderman withdrew.   Therefore, although sanctions could technically be imposed, a severe sanction is not.   Accordingly, the Court imposes a monetary sanction of $500, which amounts to a reasonable sanction that shall effectively serve to deter such future conduct.

## IV.   CONCLUSION

The case is the quintessential example of what the consequences are for abusing our litigation system.   The genesis of this litigation was a political dispute; the intentions behind each filing lacked even a modicum of good faith and it was driven and exacerbated by negative emotions stemming from that dispute, which was then compounded by bad lawyering.

Even worse, the actual legal issues were simple and *provable* as a matter of law and fact very early on in the proceedings.   The necessary discovery and dispositive motion practice should have been straightforward and, if utilized, would have secured Lewis a quick and positive result. What transpired, however, is quite the opposite. This lawsuit has dragged on for over seven years, generated excessive sanction motions, numerous hearings, dispositive motions, a jury trial, post-trial motions, attorney's fees motions, and appeals ... all over the illusory residency and unremarkable credit report of one Christopher Peer.

The Court can only hope that this Order shall finally put this matter to rest.

For the reasons outlined above, it is hereby **ORDERED AND ADJUDGED**:

1.      On remand, Lewis's Motion for Sanctions against Richard L. Rosenbaum [D.E. 151] is **GRANTED in part**.  Pursuant to the Court's inherent powers, and based on Rosenbaum's bad faith conduct, the Court sanctions Rosenbaum and imposes a monetary penalty in the sum of $1,000.00.

2.      On remand, Lewis's Motion for Sanctions against Barry G. Roderman and Scott M. Greenbaum [D.E. 118] is **GRANTED in part**.  Pursuant to the Rule 11, and *Peer's* finding of objective frivolousness, which the Court imputed on them, the Court sanctions Greenbaum and Roderman and imposes a monetary penalty on them in the sum of $5,000.00 and $500.00, respectively.

3.       Rosenbaum, Greenbaum and Roderman shall have twenty-one (21) days from the date of this Order to remit payment to counsel for Daniel W. Lewis.

**DONE AND ORDERED** in Chambers at Miami, Florida this 3rd day of April, 2013.

_/s/ Edwin G. Torres_
EDWIN G. TORRES
United States Magistrate Judge

28